HARPER *et al. v.* THE NEW YORK CITY INSURANCE COMPANY.

In a policy of fire insurance upon printing and book materials, in a building "privileged for a printing office and bindery," there was a condition exempting the insurer from liability for any loss occasioned by camphene —camphene being a necessary material for the printing of books: *Held,* that the exemption extended only to a loss occasioned by its use for purposes other than that of printing.

APPEAL from the Superior Court of the city of New York. Action upon a policy of fire insurance on the plaintiffs' "printing and book materials, stock, paper, stereotype plates, fixtures, printed books, and steam engine and machinery contained in [certain described premises], and privileged for a printing office, bindery and bookstore." The policy provided, in its printed conditions, that, if the premises should be used for carrying on any business denominated hazardous, or extra

hazardous, or specified in the memorandum of special rates, or for storing articles in either of those categories, without a special agreement in the policy therefor, so long as such use should continue the policy should be of no force. "Stocks of booksellers," and "printers of books," were specified under the head of extra hazardous, and the business of "printers of books" in the memorandum of special rates. Upon the trial it was proved that the plaintiffs' establishment was the most extensive for the printing of books in the country; and the jury found specifically, in answer to interrogatories, that the use of camphene was general among printers for fine work in the printing of books, for cleaning ink-rollers, washing stereotype plates, &c., and that such use was not only more advantageous than that of any other article, but necessary. The fire was occasioned by a workman's throwing a lighted match into a pan upon the floor containing camphene. There was a verdict for the plaintiffs, subject to the opinion of the court; and judgment having been rendered thereon at general term, the defendant appealed to this court.

*John H. Reynolds*, for the appellant.

*William M. Evarts*, for the respondents.

COMSTOCK, Ch. J. The jury found, in answer to interrogatories specially submitted to them, that the use of camphene, in the manner proved, was according to a general and established usage in the printing and book business, as carried on by the plaintiffs, and that such use was necessary in that business. In the written part of the policy the subject of insurance is described as the plaintiffs' printing and book materials, stock, &c., "*privileged for a printing office, bindery,*" &c. The language is identical with that contained in the policy which was before us in the case of *Harper* v. *The Albany Insurance Company* (17 N. Y., 194). We there held, for reasons which need not be repeated, that the insurers were liable for a loss occasioned by the necessary and customary use of camphene in the plain-

tiff's business, although the use of that article was prohibited in general terms in the printed conditions annexed to and forming a part of the contract. In that case, the printed form of the policy, if construed without reference to the subject of insurance as described in the written part, proscribed the use or presence of camphene for any purpose. In this case the printed condition declares in substance that if the article is used and a loss is occasioned thereby, the insurer will not be liable. There is no other distinction between the two cases.

And this distinction is not one of principle. In the case cited, we found no irreconcilable repugnancy between the written and printed clauses of the contract. If such a repugnancy had been discovered, then, as the court said, the printed form must yield to the more careful and deliberate written language of the parties in describing the subject of insurance at the very moment when the policy was issued. But it was considered that each clause might take effect. By insuring the plaintiffs' stock with the privilege of a printing office and book bindery, the use of such materials, including camphene, as were necessary in that business, was allowed. Otherwise, the contract was a mere delusion. But the restraining clause might, nevertheless, have its full effect upon the use of camphene for the purposes of light and for all purposes beyond its necessary connection with the stock and business insured. So, in this case, camphene must be considered as a part of the stock insured. Its continued presence and use were allowed, because the business which required its use was expressly privileged. The printed condition, exempting the underwriters from loss when occasioned by this article, should, therefore, be construed as referring to uses not within the privilege thus granted. Otherwise, the two parts of the contract are repugnant to each other, and the printed form must yield to the deliberate written expression. An insurance upon the plaintiffs' stock and business, to be of no effect if a loss should be occasioned by the combustion of an article constituting a part of that stock, and necessarily used in the business, would, I think, be an anomalous undertaking. Undoubtedly, such a contract might be

made. A policy can be so framed as to allow the presence of a dangerous article, and even so as to insure its value, while, at the same time, it might exempt the insurer from loss if occasioned by the presence or use of the article. But I think it would need very great precision of language to express such an intention. Where camphene, or any hazardous fluid, is insured, and its use is plainly admitted, the dangers arising from that source are so obviously within the risk undertaken, that effect should be given to the policy accordingly, unless a different intention is very plainly declared. And such an intention, instead of being hid away in printed forms, remote from the principal contract, ought to be found in the deliberate expressions which are made use of at the time when the contract is entered into. Without doubt, all the printed conditions and specifications annexed to a policy are, or at least may be, a part of it. But they relate to insurance in general, as practised by the underwriter; and upon, or within, those forms, the parties to each policy actually issued write their own particular intention. The plain meaning of the written part should, therefore, prevail, and other clauses must yield, if repugnant, or they must be construed so as to avoid a conflict of intention. In this case, I think, the perils of keeping and using camphene were insured against, so far as the keeping or use of it was permitted at all, and that the clause which exempts the insurer from liability should be understood as applying to the presence of the article under other conditions.

The judgment should be affirmed.

DAVIES, WRIGHT, BACON, and WELLES, Js., concurred.

SELDEN, J. (Dissenting.) Contracts which belong to an extensive class, such as charter parties, policies of insurance, &c., where all are in their main features identical, are usually reduced to a prescribed formula, embracing those general provisions which are applicable to most cases of the class, and then printed, leaving blank spaces to be filled up in writing, so as to adapt the contract to the particular case. In construing such con-

tracts, if there is any repugnancy between the written and the printed portions, the latter is to be modified and controlled by the former.   In other words, those general provisions which were framed for the class at large, must yield to such as are more specific and designed for the particular case.   This rule, which was applied in *Harper* v. *The Albany Mutual Insurance Company* (17 N. Y., 194), and *Bryant* v. *The Poughkeepsie Mutual Insurance Company* (id., 200), is equally applicable here. That portion of the printed conditions incorporated into the policy which related to the various articles and kinds of business denominated hazardous and extra hazardous, and those which are subjected to special rates of insurance, virtually prohibited the use of camphene upon the insured premises.   But the written portion insured the plaintiffs upon their printing office, bindery, and bookstore, and upon the materials, stock and machinery therein; and, as it appeared that camphene constituted a necessary portion of such stock, and was essential to the carrying on of the business insured, its use was clearly authorized by this clause of the policy.   There was, therefore, a direct conflict between the general provisions contained in the printed conditions of the policy and the written description of the particular subject of insurance; and, of course, the latter must prevail.   The use of camphene, therefore, was authorized, and it was itself insured as a part of the plaintiffs' stock.

Thus far there is no controversy between the parties; but the contest arises under another clause of the policy.   The eighth condition provides that the company " will not be liable for loss or damage caused by lightning, except that which results from fire that may ensue therefrom; nor for any loss, either by fire or otherwise, occasioned by the explosion of a steam boiler, or *occasioned by camphene or other inflammable liquid,* or by the explosion of gunpowder."   The position of the defendants is, that the loss, as shown by the proofs, was " occasioned by camphene," and, hence, they are not responsible.   It becomes necessary, therefore, to put a construction upon that condition of the policy which I have just recited.

The counsel for the plaintiffs contends that this provision was only intended to exempt the company from liability for any loss which should be occasioned by camphene "in a relation or use *outside* of the description and privilege" contained in the policy. But there are serious difficulties in the way of such a construction. It is an entire departure from the language of the provision, which is broad and general, embracing every loss which should be in any way occasioned by camphene. To make this interpretation compatible at all with the terms of the provision, it is necessary to interpolate a clause more extensive than the entire provision as it stands. The policy says, the insurers will not be liable for any loss " occasioned by camphene." This is said to mean that they will not be liable for such a loss, provided the camphene which caused the loss was outside the insured premises, or was used upon such premises in a manner not authorized by the policy. I know of no rule for the interpretation of contracts which warrants so extensive an interpolation. It would make a contract widely different from that which would result from the terms used by the parties themselves.

The argument in favor of this interpretation is, that, by force of the rule that the written is to prevail over the printed portion of the policy, the defendants have not only authorized the use of camphene by the plaintiffs for certain purposes, but have consented to include camphene itself as a part of the plaintiffs' stock among the articles insured; and that it cannot be supposed that they intended to exempt themselves from liability for a loss which should be occasioned by one of the insured articles, and which was upon the premises under the precise circumstances authorized by the policy.

The incongruity suggested by this argument is hardly sufficient to prevent our construing this contract as the parties have made it. What repugnance is there between the provision which authorizes the use of camphene in the business of the insured, and that which exempts the company from liability for a loss " occasioned by camphene?" I can see none whatever. By the written portion of the policy the insurers assumed

a responsibility in regard to the use of camphene from which they were entirely exempted by the printed conditions relating to hazardous and extra hazardous business. The eighth condition comes in as a modification of this responsibility. It operates as a division and mutual distribution between the insurers and the insured of the risks resulting from the use of this hazardous article. By the two provisions combined, the insurers say to the insured, we will agree that the mere presence of camphene upon the insured premises, or its use there in your business, shall not vitiate the policy; but if it shall be the actual primary cause of any loss, we will not be held responsible. Such an arrangement is not open to any legal objection, but one which the parties had a perfect right to make, and which seems to me not unnatural. It does not cast the entire risk upon either of the parties, but divides it between them. If a fire occurs from some other cause, and, in consequence of the presence of camphene upon the premises, it is aggravated and made more destructive than it otherwise would have been, the loss falls upon the insurers. If a fire is occasioned by the camphene, and the insurers are not able to trace it to that cause, the loss falls upon them. It is only in those cases where the insurers are able to show that camphene was the original cause of the loss, that the risk is assumed by the insured. I see nothing, either in law or in reason, against the making of such a contract; and that is precisely the contract which these parties have made, if we interpret their language according to its natural import.

The only remaining question is, whether the loss in this case can be said to have been "occasioned" by the camphene. I agree with the plaintiffs' counsel that a loss cannot be said to be occasioned by camphene, within the meaning of this policy, because a fire originating independently of that article is rendered less controllable and more destructive by it. Camphene must be the primary cause of the loss, in order to absolve the company from responsibility. The counsel seems to suppose that, in order to exempt the company, it is necessary that the fire which produces the loss should have been originated by

camphene; but this, I think, is not essential. The language of the provision is, any loss occasioned by camphene. If, therefore, the fire, although it existed, would have been wholly innocuous but for its having come in contact with the camphene, the loss which ensues may properly be said to have been caused by camphene. In such a case, there would, but for the camphene, have been no loss; and it of course follows that camphene would be the cause, or at least a cause, of the loss. In this view, the present case is clearly within the condition. It is not pretended that the lighted match would have done any mischief, had it not come in contact with the camphene.

It is, however, by no means necessary to rest the defence upon this construction. For, if it be assumed that, in order to exempt the insurers from liability under this condition, it is essential to show that the fire which produced the loss was itself caused by the camphene, the result must be, I think, the same. It is argued that the camphene cannot be said to have caused the fire in this case, because the match was ignited before it came in contact with the inflammable liquid. The camphene, it is said, may have caused the flame to spread and become uncontrollable, but that this does not make it the original cause of the fire. But, if the camphene cannot be said to have caused the fire in this case, it could not, for the same reason, in any case where the combustion of the camphene was produced by any material previously ignited. This necessarily reduces the operation of the provision, upon the construction now assumed, to those cases only where the camphene becomes ignited in consequence of its own inherent inflammable nature; in other words, to cases of spontaneous combustion, if such a thing is possible.

But is it probable that this formal provision was devised and introduced into the policies of this company merely to guard against responsibility for a loss of this kind—one that, if it could occur at all, would not be likely to do so once in twenty years? This can hardly be supposed. The clause must be of more practical import than this, or it would never have found

its way into this class of policies.  If it equires that the camphene should be the cause or occasion of the fire, it must mean the fire which produces the loss—a destructive fire, and not a fire which is perfectly legitimate and harmless, as was the lighted match aside from the camphene.  The counsel for the plaintiffs has virtually conceded this, by the suggestion, in his printed points, that camphene may be said to occasion the loss "when its use becomes the means whereby the proper and ordinary use of light or fire in the premises is *inflamed into a destructive combustion.*"  In this the counsel adopts the very construction for which I contend, and supposes that, although the camphene does not originate the fire, yet, if it is the sole cause of its becoming destructive, it may be said to occasion the loss.

There can be no distinction, in this respect, between the light or fire referred to by the counsel and the ignited match in this case.  The use of the latter was just as legitimate and proper, and, but for the camphene, would have been just as harmless, as that of light or fire for ordinary purposes.  In any view, therefore, which may be taken of the provision under consideration, we are brought to the conclusion that it embraced the present case.  Indeed, it would hardly seem necessary to resort to any very refined reasoning to prove that a loss, no part of which would ever have occurred but for the presence of camphene, may fairly be said to have been " occasioned by camphene."

The charge of the judge, therefore, to which the defendants' counsel excepted, was erroneous.  He should have instructed the jury that, if they should find that the lighted match would have been entirely harmless, and that no destructive fire nor any loss would have occurred but for the presence of camphene, the plaintiffs could not recover.  The judgment should be reversed, and a new trial granted.

DENIO and CLERKE, Js., concurred in this opinion.

Judgment affirmed.