McIlvaine, J.
This proceeding is prosecuted to reverse a judgment rendered by the Superior Court of Cincinnati, at general term, reversing a judgment rendered at special term.
The original action was brought, by the defendants in error (who were plaintiffs therein), against the plaintiff in error (defendant therein), to recover the amount of a policy of insurance, issued by the defendant to the plaintiff’, on the 9th of March, 1867, for a year, upon a stock of merchandise contained in a building of the plaintiffs’ situate in the city of Cincinnati, which, together with the buildings was destroyed by fire on the 11th day of April, 1867
*344 By the terms of the policy it appears that the plaintiffs were insured against “ loss or damage by fire to the amount of five thousand dollars on their slock of merchandise, consisting principally of liquors, fixtures, tools, and office furniture contained in their brick building, situate on the southwest corner of Congress and Kilgour streets, Cincinnati, Ohio, and occupied by them as a liquor store, with privilege of rectifying and manufacturing fine spirits by steam not generated in the building.
The principal defense arose under one of the conditions of the .policy, which is in these words:
“ VII. This company is not liable for loss or damage by lightning or tornado, unless expressly mentioned or insured against; but will be responsible for loss or damage to property consumed by fire occasioned by lightning. Nor will this company be responsible for any loss or damage to property consumed by fire happening by reason of, or occasioned by any invasion, insurrection, riot or civil commotion, or of any military or usurped power, nor where the loss is occasioned or superinduced by fraud, dishonesty, or 'criminal conduct of the insured, nor to any loss or damage occasioned by, or resulting from any explosion whatever, whether of steam, gunpowder, camphene, coal-oil, gas, nilro-glycerine, or any explosive article or substance, unless expressly insured ■against, and special premium paid therefor
The plaintiffs counted upon the undertaking in the policy, and stated the loss to be by fire.
The answer set up the above condition for a first defense, and averred that the said fire, loss, and damage referred to in the petition, were solely occasioned by, and resulted from, an explosion caused by some explosive substance, and that the same was not expressly insured against, nor was a special premium paid therefor, and denied any loss within the terms and meaning of the policy.
The answer also set up, for a second defense, that the plaintiffs did, after the issuing of the policy and before the loss, carry on and exercise within the building, up to the time of the fire, the trade and business of distilling and *345 ■manufacturing spirits by steam generated, in the said building, contrary to the provision of tbe policy which is set out; •and by an additional answer, filed by leave of court, the defendants, for a third defense, pleaded that the plaintiffs had in operation in the building, up to the time of the fire, three large stills, which greatly increased the risk, and that -these stills were concealed from them, and that they had no knowledge of the same. Replies were filed to these answers, putting the same in issue.
The issues of fact arising upon the defenses, set up by the defendant below, were tried, upon submission by the parties, by the judge at special term, who found in favor ■of the defendant upon the first defense, and in favor of the plaintiffs upon the second and third defenses.
A motion to set aside the iinding and for a new trial was made on behalf of the plaintiffs, and overruled. ’ A bill of •exceptions was then taken, setting out all the evidence, and judgment was rendered for’the defendant.
A petition in error was filed in the general term, and the judgment was reversed.
To reverse this judgment of reversal, and restore the judgment at special term in favor of the defendant below, it prosecutes the present petition in error. If it prevails, the litigation is ended by a final judgment; if it fails, the cause will stand for a new trial.
The main question for decision by this court is, whether ■the Superior Court in general term erred in law in reversing the judgment at special term.
And that question may be stated in this form: Did the. facts proved on the trial at special term, when considered in connection with the terms of the seventh condition to the policy fairly construed, clearly sustain the finding of the court in favor of the defendant upon its first defense?
I do not propose to repeat in detail the testimony set out in the record; but will content myself in stating the conclusions of fact, which, in our opinion, are clearly drawn from the testimony. It is proper to say, however, that the testimony in this case is remarkably free from contradie *346 tions. The only doubt that can possibly arise upon the-evidence is as to the proper inferences to be drawn from facts cl early proven; but these inferences, we think, are quite evident.
The testimony shows, that, at the time of taking out the policy, and until the time of the fire, the plaintiffs were engaged in the business of rectifying whisky, and manufacturing fine spirits by the use of steam, in the building occupied by them as a liquor store, and in which the insured stock of merchandise, consisting principally of liquors, etc., was kept. The size of the building was sixty by one hundred and eighty feet, and was four stories high. There was communication between the stories through open stairways and hatches. The business of rectifying was carried on in the basement story, where the stills — large metallic vessels — were located. The upper stories were chiefly used for storage of liquors and cooperage. The process of rectifying was conducted as follows: The raw spirits or liquor was conveyed by means of pipes, called leaders, from tubs-situate in the upper stories to the stills below; when the-stills were thus charged, the liquor therein was converted info vapor by means of steam which passed through the-stills in copper pipes, called worms; the vapor thus evolved was conducted by other pioes to a condenser, where it was-reduced to a liquid state.
The vapor evolved in the process of rectification is an-inflammable substance. It readily mixes with the atmosphere, and when so mixed in certain proportions is explosive, and when such mixture is brought into contact with flame it explodes. Ou the morning of the fire a large still was being charged through a leader about two inches in diameter, which passed into the still through a vacuum vahe (an aperture in the still near its top), the diameter of which was about four inches. At the same time steam was passing through the worm, converting the liquor in the still-in to vapor, which escaped through the vacuum valve into-the still-room, and thence tfo doubt into other parts of the-building. The process of the thus charging the still, ac *347 companied with the discharge of vapor, had continued for some time — perhaps an hour preceding the fire. During-the progress of this process, two jets of gas were burning in the still-room, one at a distance of three or four feet from the vacuum valve, and the other in another part of the room. There was no other fire or flame in the room or in the building at the time.
Such being the circumstances, an explosion took place in the still-room. A sudden and violent combustion of the-vapor, accompanied with a noise — described by one witness as being like the crack of a gun ; by another, as if a bundle of iron had been thrown on the pavement; by another, as a crash, and by another, as a gush of fire; and at the same instant the flame was driven'through a doorway into another building, whereby a witness was badly burned. Immediately after the explosion, a flame was discovered escaping from the still through the vacuum valve, and at the same time the building was discovered to be on fire throughout the several stories.
Erom these facts and circumstances we think it was clearly shown, that the fire, by which the building and stock of merchandise insured were consumed, was occasioned by and.resulted from an explosion of spirit vapor mixed with atmosphei’e, and that the explosion was caused by the mixture coming ixi contact with the burning gas-jet.
1. The first question which we notice particularly is this: "Was the explosion, which in fact occurred, such, in degree of violence, as was contemplated by the paxdies to the policy?
The word “explosion” is variously used in ordinary speech, and is not one that admits of exact definition. Its general characteristics may be described, but the exact facts which constitute what we call by that name, are not susceptible of such statement as will always distinguish the occurrences. It must be conceded that evexy combustion of an explosive substance whereby other property is ignited and consumed, would not be an explosion within the ordinary meaning of the term. ' It is not used as the synonym *348 ■of combustion. An explosion may be described generally, .•as a sudden and rapid combustion, causing violent expansion of the air, and accompanied by a report. But the rapidity of the combustion, the violence of the expansion, and the vehemence of the report., vary in intensity as often as the occurrences multiply. Hence, an explosion is an idea of degrees, and the true meaning of the word, in each particular case, must be settled, not by any fixed standard, ■or accurate measurement, but by the common experience and notions of men in matters of that sort. In this case, although the building was not rent asunder, or the property therein broken to pieces, there was a sudden flash of flame, a rush of air, and a report like the “ crack of a gun,” which certainly brings the occurrence within the common meaning of the word as used in many instances. “Any explosion whatever” is the phrase used in the condition to the policy, and it is qualified by the context only to the extent that it must be an “explosion” of some “explosive , substance,” and of sufficient force as to result in loss or ■damage to the property insured. And these characteristics we have found to exist in the occurrence that resulted in the loss of this property.
2. It is claimed that the fire which destroyed the property insured, did not result from the explosion, but, on the contrary, that the explosion was incident to and caused by the fire, which, if there had been no explosion, would have accomplished the whole loss and damage; or, at least, that •such inferences may bo drawn from the facts in the case as fairly and as legitimately as contrary inferences.
The proof unquestionably shows that the origin of the fire and the explosion were simultaneous. It may be true, in a strictly scientific sense, that all explosions caused by combustion are preceded by a fire. The scientist may demonstrate, in a case where gunpowder is destroyed by ■fire, or in any case where the explosion is caused by or accompanies combustion, that ignition and combustion precede the explosion; but the common mind has no conception of such combustion, as a fact independent of the *349 explosion, where they concur in such rapid succession that, no appreciable space of time intervenes. The terms of this policy must be taken in their ordinary sense : and we are satisfied that the proofs show, according to the ordinary sense and understanding of men in reference to such matters, that the explosion occasioned the fire which destroyed the property insured; or, in other words, that the-loss resulted from an explosion within the true intent and meaning of this policy.
It is true that the explosion was caused by a burning gas-jet, but that was not such fire as was contemplated by the-parties as the peril insured against. The gas-jet, though burning, was not a destructive force, against the immediate-effects of which the policy was intended as a protection ; although it was a possible means of putting such destructive force in motion, it was no more the peril insured against than a friction match in the pocket of an incendiary. The conclusions to which we thus arrive, are mere inferences from other facts — facts, however, about which there; was no conflict in the testimony — yet they are so manifestly true, that we think it was error of law, under our statute,, to reverse the judgment rendered thereon at the special-term of the Superior Court, upon the strength of contrary-inferences drawn from the same facts by the reviewing-court.
3. The next question arises upon the terms of the policy,, and is one of construction purely. "Was it intended, by the provisions of the seventh condition, to exempt from the-risks assumed by the policy, losses by fire occasioned by am explosion?
It is claimed that the clause exempting losses by explosion taken alone, or construed in connection with other clauses in the condition, does not show such inteution. It is true that the words “ by fire,” or their equivalent, are omitted in this clause, though expressed in some of the-former clauses. The foundation point, however, in construing this condition, is found in the general undertaking of ■ the policy. It will be observed that the underwriter under-t *350 took to insure against loss and damage by fire only; but, nevertheless, against loss and damage by fire generally, and the maxim, cansa próxima, non remota, spedatur, applies. Now, we think, without doubting, that the purpose of inserting this condition was to relax the rigor of this maxim, and exempt from the general risk of the policy certain losses, which would otherwise fall within its scope and meaning. The first clause of the condition provides that “ this company is not liable for loss or damage by lightning or tornado, unless expressly mentioned and •insured against.” If this were the whole of the clause, and • it were not understood that the loss and damage referred to, were such as might result from fire occasioned by lightning or tornado, it would be utterly meaningless and nugatory, for the reason that the underwriter had not undertaken to insure against lightning or tornado. So far the construction is plain enough, but a difficulty arises from the conclusion of the clause, to wit, “but will be responsible for loss or damage to property consumed by fire occasioned by lightning.” The exception to the rule of exemption from loss by lightning appears to be as broad as the rule itself. But I apprehend that a case might arise in which effect and operation could be given to all the terms of this clause, including those which are implied as well as those expressed. At all eveuts, it is perfectly clear that loss and damage by lightning and tornado are not within the expressed risks of the policy, unless a fire supervenes; nor is there anything in the policy from which such risks can be implied.
The condition continues: “Nor will the company be responsible for any loss or damage to property consumed by fire happening by reason of. or occasioned by, any invasion, insurrection, riot, or civil commotion, or any military or usurped power.” The exemptions here provided for are expressly limited to losses within the terms of the general risk of the policy. But if such limitation had not been -expressed, it would have been implied.
The next clause is as follows: “Nor when the loss is *351 occasioned or superinduced by the fraud, dishonesty, or criminal conduct of the insured.” There is no pretext for holding that the loss here contemplated Í3 other than loss by fire, although no such qualification is expressed. Then follows the clause in question, which, to all intents and purposes, is framed like the preceding one: “ Nor to any loss or damage occasioned by or resulting from any explosion whatever, whether of steam, gunpowder, camphene, coal-oil, gas, nitro-glycerine, or any explosive article or substance, unless expressly insured against and special premium paid therefor.”
Unless there is something in the subject matter of this clause that indicates that the words “by fire” were omitted for the purpose of showing a design to adhere to and continue the general risk in case an explosion should result in a fire, we think that they or their equivalent should be supplied by implication or construction.
Is such purpose indicated by any fair use of the terms employed ?
That a loss, other than by combustion, resulting from an explosion, when the explosion itself is caused by a destructive fire already in progress, comes within the general risk of a policy against fire only, is a doctrine not only reasonable in itself, but is sustained by authority. Waters v. La. Mer. Ins. Co., 11 Pet. 225; Scripture v. Low. Mut. Fire Ins. Co., 10 Cush. 357; Millauden v. N. O. Ins. Co., 4 La. Ann. 15. And it is quite clear that a loss by fire, which is occasioned by an explosion, is withiu the like risk. Now, the express terms of this clause are “ any loss or damage occasioned by or resulting from any explosion whatever.” These terms are cei’tainly comprehensive enough to include both descriptions of loss — whether loss by the explosive force, or loss by superinduced combustion. And that such is their legal effect has been directly decided in the case of Stanley v. Western Ins. Co., Law Reports, 1868; 3 Exchequer, 71. It is not neeesary at this time to either approve or disapprove, to the whole extent, the doctrine in Stanley’s case, as in this case no damage was sus *352 tained from the explosion without the intervention of afire, nor, indeed, was the explosion caused hy a fire within the’ meaning of the policy. But we can find no good reason-for doubting that loss and damage by fire, resulting from an explosion, was intended to be exempted by this condi- , tion from the general risk of the policy, and are of opinion,, therefore, that this clause properly construed should read, “nor any loss or damage by fire occasioned by or resultingfrom any explosion whatever.”
4. It is claimed by defendants in error, that the peril by which the property insured was destroyed, was within the* exception to the seventh condition; that is, it was “expressly insured against, and special premium paid therefor;” or, in other words, was excepted out of the exception.
The reasoning by which this proposition is sought to be-maintained is thus stated:
“The body of the policy covered loss by fire on liquors,, etc., with the privilege of rectifying and manufacturing fine-spirits by steam not generated in the building. The property insured was whisky, as well in the process of rectification and manufacture as manufactured — whisky in the--still, as well as spirits in the barrel — the whisky vapor itself, while passing through the columns to the cooler, or wherever else it might make its way. If it was in this form an-explosive substance or article, such as is intended by the language of the condition, or if, in the process of manufacture allowed by the policy, it was likely to become such byescape and mingling with the air in the building, then the insurance was upon it, as an agent known to be explosive under certain circumstances likely to happen, and with the express assent of the company to the carrying on of that process, in the course of which its explosive nature would naturally and probably be developed.”
The principle sought, by this argument, to be applied, is announced in Harper v. New York City Insurance Co., 22 N. Y. 441; Fitton v. Accidental Heath Insurance Co., 17 Com. Bench N. S. 112.
In the case of Harper v. New York City Insurance Co., *353 the condition exempted the company from liability for loss occasioned by eamphene. The fire was occasioned by a workman’s throwing a lighted match into a pan upon the floor containing eamphene. The risk was upon a printing stock, privileged for a printing office, eamphene not being expressly enumerated. But it was shown that that article was a usual part of such a stock, and its use was therefore authorized. For this reason alone, because it was impliedly insured, it was held that the exception did not apply.
The following extract from the opinion expresses its doctrine :
“A policy can be so framed as to allow the presence of a dangerous article, and even so as to insure its value, while, at the same time, it might exempt the insurer from loss if occasioned by the presence or use of the article, But I think it would need very great precision of language to express such an intention. When eamphene or any hazardous fluid is insured, and its use is plainly admitted, the dangers arising from that source are so obviously within the risk undertaken, that effect should be given to the policy accordingly, unless a different intention is very plainly declared.”
In answer to this claim, we say:
1. That the spirit vapor, having escaped from its confinement and passed into the still-room, where it became mixed with atmosphere so as to form an explosive substance, under circumstances that precluded all possibility of reclaiming and utilizing it, was no longer a part of the stock of merchandise insured, and was not under the protection of the policy.
2. If, from the nature of the property insured, the parties, at the time the risk was taken, might reasonably have anticipated the peril by which it was afterward destroyed, it is reasonable to suppose that such peril was in contemplation at the time, and that they contracted in reference to it. Hence, if the general risk of the policy was expressed in terms broad enough to include the peril, it must *354 be presumed that they intended to do so; and ou the other hand, if an exception to the risk was made in terms which fairly and plainly took such particular peril out of the general risk, it must be presumed that they intended to exempt such particular peril from the risk. Again, if it be claimed that there was an exception to such exemption, whereby the particular peril was saved from the exemption and left under the general risk, it is reasonable that the terms of exception should be at least as explicit as the terms of exemption. How is it in this case ? The risk was against all loss by fire. The exception-from the risk was “ any loss or damage occasioned by an explosion of steam, gunpowder, etc.” The exception to this exemption was, “ unless expressly insured against, and special premium paid therefor.” Therefore, it only remains to be said, that no loss or damage occasioned by an explosion of any of these substances named was expressly insured against, nor was any special premium paid for any such special risk.
It follows, therefore, that the judgment of reversal rendered at general term must be reversed, and the judgment rendered at special term must be affirmed.