# Grandin *versus* Rochester German Insurance Company.

1. Fire insurance being a contract of indemnity, policies must have a reasonable construction in view of that main intent of the parties, having reference to the particular nature and situation of the subject matter insured.

2. Where the reason of a general condition in a printed form of policy of insurance does not exist in a particular case, the condition itself becomes meaningless and inoperative. Where, therefore, a form of policy is used by an insurance company for the insurance of a peculiar kind of property, peculiarly situated, which policy contains general conditions which are inapplicable to the subject matter of the insurance, such conditions will be ignored by the court in construing the contract.

3. Where printed clauses in a policy of insurance conflict with written clauses therein, the former must yield to the latter.

4. If a policy of insurance be obscure in its meaning, it must be con-

[Grandin v. Insurance Co.]

strued, as between the parties, most strongly against the insurance company which issued it.

5. A. owned individually and owned in common with others a certain number of barrels of petroleum placed for transportation and storage in the Tidioute and Titusville Pipe Line, Limited.   To protect himself from loss by assessment in case of fire, he took out a policy of insurance for $2500 on petroleum, " his own or held by him in trust for others."   One of the printed conditions of said policy provided that "if the insured is not the sole, absolute, and unconditional owner of the property insured, then this policy to be void."   An assessment having been made on A. for a loss from fire :

*Held*, that the condition above set forth was not under the circumstances applicable, and that the insurance company was liable to the extent of the policy upon all oil destroyed in which A. had any interest whatever.   The company in the above case was not liable for the loss of oil in which A. had no interest, but which the owners had in writing requested him to insure before the issuing of the policy in suit.

May 26, 1884.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Warren county :* Of January Term, 1884, No. 403.

Assumpsit, on a policy of fire insurance, by " J. L. Grandin, who sues for himself as well as in trust for others " against the Rochester German Insurance Company, of Rochester N. Y., to recover for a loss on certain oil, destroyed by fire in the Tidioute and Titusville Pipe Line, Limited.   After issue joined the parties submitted the following facts, in the nature of a case stated, for the opinion of the Court, viz :—

1. On May 9, 1879, E. B. Grandin, W. J. Grandin, Samuel Grandin, A. F. Neyhart and M. T. Neyhart executrix of A. Neyhart deceased, gave the plaintiff, J. L. Grandin, the following written request :—

TIDIOUTE, PA., May 9, 1879.

J. L. GRANDIN, Esq.—*Dear Sir :* We wish to have our oil, in the Tidioute and Titusville Pipe Line, insured against assessments, and request you to cover it for us in the Blanket policies you are to take out in your own name.   (Signed by the above named persons).

2–4. In pursuance of said request the plaintiff took out a policy of insurance in the Lycoming Mut. Ins. Co., which was subsequently cancelled, and in place thereof, the plaintiff effected, through a firm of brokers in New York City, an insurance with the defendant company, a corporation organized under the laws of the state of New York and doing business in the state of Pennsylvania, under the laws thereof. Said policy was dated September 20, 1879, and, with certain omissions not pertinent to this issue, was as follows :—

No. 9393.                                                     $2500.

The Rochester German Insurance Company of Rochester

N. Y., by this Policy of Insurance, in consideration of the receipt of two hundred and fifty$\frac{1}{100}$ dollars, do insure J. L. Grandin for the amount of twenty five hundred dollars for the term of one year, as follows, viz: $2500 on petroleum, his own or held by him in trust for others, or sold but not delivered, while in custody of the Tidioute and Titusville Pipe Line, Limited, and located upon the premises of the said Pipe Co. in Pennsylvania, it being understood that the loss, if any, shall be borne pro rata by all petroleum in custody of the Pipe Co. at the time of such loss subject to assessments. It is hereby agreed that this company shall only make good to the assured any loss apportioned as above. The assured agrees to keep $7,500 concurrent insurance, this policy included, or be deemed co-insurer to extent of any deficiency at time of any loss.

1. If an application, survey, plan, or description of the property herein insured, is referred to in this policy, such application, survey, plan, or description, shall be considered a part of this policy, and a warranty by the assured, and if the assured in a written or verbal application makes any false or fraudulent representation, or fraudulently or intentionally omits to make known any fact material to the risk; or fraudulently or intentionally conceals a fact material to the question whether this company will insure at all, or if the assured shall have or shall hereafter make any other insurance on the property hereby insured, without the consent of the company written herein; or if the risk be increased by any means within the control of the assured; or if the risk is increased by circumstances or means known to him but beyond his control and he fails to give proper notice thereof to this company or its agents, or immediately upon the passing or entry of a decree of foreclosure, or upon a sale under a deed of trust, or if the assured shall be adjudged a bankrupt, or if the property insured be assigned under any bankrupt or insolvent laws, or if any change takes place in the title or possession of the property, whether by sale, transfer or conveyance, legal process or judicial decree; or the policy is assigned without the consent of the company endorsed hereon, or if the assured is not the sole, absolute, and unconditional owner of the property insured or (if said property be a building or buildings) of the land on which such building or buildings stand, by a title in fee simple and this fact is not expressed in the written portion of the policy; or if gunpowder, fireworks, phosphorus, naphtha, benzine, gasoline, or petroleum fluid, or crude earth or coal oils, or any articles of an extra-hazardous or specially hazardous nature, are kept or used on the premises, except that kerosene oil may be used for lights in dwellings; or if

[Grandin v. Insurance Co.]

camphene, burning fluid or refined earth or coal oils are kept for sale, stored or used on the premises in quantities exceeding one barrel at any one time without written consent; or if the loss or damage is occasioned through the fault or culpable neglect of the assured, or if the premises hereby insured shall become vacated by the removal of the owner or occupant, and so remain for a period of more than thirty days, without notice to the company, and consent endorsed hereon; or for neglect of or deviation from the laws or police regulations or city ordinances made to prevent accidents from fires; then, and in every such case, this policy shall be void.   This policy may be cancelled at any time at request of the assured, the company retaining customary monthly short rates for the time this policy has been in force; it may also be cancelled by the company, on giving written or verbal notice to that effect, and refunding or tendering a ratable proportion of the premium for the unexpired term of the policy.

5. On the 11th and 12th of June 1880, a fire occurred in Titusville, Pa., by which 61,114.79 barrels of petroleum in the Tidioute and Titusville Pipe Line, Limited, were destroyed.   At the time of said fire there were 268,240.73 barrels of petroleum in the custody of said pipe line.   The said Tidioute and Titusville Pipe Line Company, Limited, made an assessment upon all the oil in their pipe line at the time of the fire, of 22.79 per cent. to cover the said loss of 61,114.79 barrels.

6. Said J. L. Grandin had in said Tidioute and Titusville Pipe Line, Limited, on the 9th of May, 1879, about 250 barrels of petroleum; on the 20th of September, 1879, 354.11 barrels of petroleum; and at the time of said fire 297.52 barrels of petroleum owned by him alone.

7. Said Samuel Grandin had in said Tidioute and Titusville Pipe Line, Limited, on the 9th of May, 1879, about 2,175 barrels of petroleum; on the 20th of September, 1879, 2,634.27 barrels of petroleum; and at the time of said fire 13,073.60 barrels of petroleum.

8. Said E. B. Grandin had in said Tidioute and Titusville Pipe Line, Limited, on the 9th of May 1879, about 250 barrels of petroleum; on the 20th of September 1879, 400.82 barrels of petroleum; and at the time of said fire 443.78 barrels of petroleum, owned by himself alone.

9. J. L. Grandin, E. B. Grandin, and the executors of A. Neyhart, deceased, had in said pipe line as tenants in common, each having the one third undivided interest therein, on the 9th of May 1879, 31,244.27 barrels of petroleum; on the 20th of September 1879, the same; and at the time of the fire the same.

10. J. L. Grandin, E. B. Grandin, W. J. Grandin, A. F. Neyhart, the executors of A. Neyhart, and others had as tenants in common in said pipe line, on the 9th of May 1879, about 50,725.27 barrels of petroleum; on the 20th of September 1879, 57,336.85 barrels of petroleum; and at the time of the fire 54,156.06 barrels of petroleum. Their undivided interests were as follows: E. B. Grandin $\frac{1}{6}$, J. L. Grandin $\frac{5}{24}$, W. J. Grandin $\frac{1}{2}$, A. F. Neyhart $\frac{1}{24}$, the executors of A. Neyhart $\frac{1}{6}$, and the others the rest.

11. J. L. Grandin, E. B. Grandin, W. J. Grandin, A. F. Neyhart, and the executors of A. Neyhart deceased, and another, had in said pipe line as tenants in common, upon the 9th day of May 1879, about 35,589.49 barrels of petroleum; on the 20th of September 1879, 41,832.25 barrels of petroleum; and at the time of the fire 43,627.05 barrels of petroleum. The undivided interests therein were as follows; J. L. Grandin $\frac{1}{10}$, E. B. Grandin $\frac{1}{10}$, W. J. Grandin $\frac{1}{10}$, A. F. Neyhart $\frac{1}{10}$, the executors of A. Neyhart deceased $\frac{1}{10}$, and the rest to the other tenants in common.

12. J. L. Grandin, E. B. Grandin and the executors of A. Neyhart, deceased, had in said pipe line as tenants in common, each having the undivided one-third part thereof, upon the 9th day of May 1879, about 11,066.23 barrels of petroleum; on the 20th of September 1879, 12,342.38 barrels of petroleum; and at the time of the fire 14,775.57 barrels of petroleum.

13. J. L. Grandin, E. B. Grandin, the executors of A. Neyhart deceased, and another had in said pipe line as tenants in common, each having an undivided one fourth interest therein upon the 9th day of May 1879, about 4,327.75 barrels of petroleum; on the 20th of September 1879, 5,346.48 barrels of petroleum: and at the time of the fire 6,260.98 barrels of petroleum.

14. J. L. Grandin, E. B. Grandin, the executors of A. Neyhart, deceased, with others, had in said line as tenants in common, upon the 9th day of May 1879, 1,202.97 barrels of petroleum; on the 20th of September 1879, 1,415.45 barrels of petroleum; and at the time of the fire 502.91 barrels of petroleum; their undivided interests therein are as follows: J. L. Grandin $\frac{1}{8}$, E. B. Grandin $\frac{1}{8}$, the said executors $\frac{1}{8}$, and the other parties the rest.

15. Proofs of loss were duly made to the defendant company, and interest upon any sum for which the company may be liable is to be reckoned from the 17th day of October 1880.

16. At the time of the destruction of the oil by fire the oil was worth $1.13 per barrel.

17. The business of said Tidioute and Titusville Pipe Line Company, Limited, is the storage and transportation of oil.

[Grandin v. Insurance Co.]

18. The defendant company in its affidavit of defence, filed 11th of August 1883, tendered judgment for ten dollars.

19. If under the above statement of facts the court be of opinion that the plaintiff is not entitled to recover, then judgment is to be entered for the defendant, with costs.

If the court be of opinion that the plaintiff is entitled to recover for his loss upon the oil mentioned in the sixth paragraph, and for that only, then judgment is to be entered for plaintiff for $25.53, with interest from Oct. 17, 1880, and costs.

If the court be of opinion that the plaintiff is entitled to recover for the loss upon the oil of J. L. Grandin mentioned in the sixth paragraph, upon the oil of Samuel Grandin mentioned in the seventh paragraph, and upon the oil of E. B. Grandin mentioned in the eighth paragraph, and for that loss only, then judgment is to be entered for plaintiff for $1,185.90 with interest from Oct. 17, 1880, and costs.

If the court be of opinion that the plaintiff is entitled to recover for the loss upon the oil owned by the plaintiff and others as tenants in common (either for the whole or the interest of the plaintiff therein), then judgment is to be entered for the plaintiff for $2,500, with interest from Oct. 17, 1880, and costs.

Reserving to either party the right to take a writ of error.

The court after argument filed the following opinion and judgment :—

The conditions in a policy of insurance are a part of the contract. The policy on which this suit is brought expressly provides that "if the assured is not the sole, absolute, and unconditional owner of the property insured" then "this policy shall be void." The question is not whether the plaintiff had an insurable interest in the property named in the case stated, as partner or tenant in common, but what was the property embraced in the policy, and what were the terms of the contract? The language is, "his own, or held by him in trust for others, or sold but not delivered." The plaintiff held no petroleum in trust for others; none had been sold and not delivered, and but a little was held by him solely. If the parties' rights and liabilities are to be determined by the terms and conditions of the policy, we see no grounds on which the plaintiff can base a right to a judgment except for the petroleum of which he was the sole owner.

And now, January 8, 1884, judgment is entered on the case stated in favor of the plaintiff and against the defendant, for the sum of $25.53, with interest from Oct. 17, 1880, being as of this date $30.46, and costs.

The plaintiff took this writ of error assigning for error, inter alia, the above judgment, and the refusal of the court to

enter judgment for the plaintiff, upon the case stated, for the sum of $2,500 with interest, and costs, for the loss upon the petroleum of Samuel Grandin, E. B. Grandin, W. J. Grandin, A. F. Neyhart and the executrix of A. Neyhart deceased, as well as for the loss upon the petroleum of the plaintiff, which was in the pipe line at the time of the fire.

*D. I. Ball,* ( *C. C. Thompson* with him) for the plaintiff in error.—Insurance against loss by fire is essentially a contract of indemnity, and it is fair to assume that such was the intention of both parties to this contract. The judgment of the court below awards the plaintiff $25.53 as indemnity for a loss exceeding $2,500 to insure which amount he paid $250, as premium for one year. To reach such a result it would seem there must be error somewhere, for the plaintiff does not get the indemnity bargained for. No fraud is alleged on either side. We submit that the court misapprehended the effect of the printed clause in the policy that "if the assured is not the sole, absolute and unconditional owner of the *property* insured" the policy shall be void. The fact that part of the plaintiff's " property " consisted of undivided interests, violated no clause of the policy. He was the sole, absolute and unconditional owner of such undivided interest, he could sell it, charge it or give it away, without the consent of the owners of the other undivided interests. In the Pipe Line everybody's oil is mingled and held in undivided interests, like deposits of cash in a bank, but that does not affect the individual absolute ownership. The plaintiff was not required to identify his oil for " each barrel of oil in the pipes is the precise counterpart of every other barrel contained therein: " Hutchison *v.* Commonwealth, 1 Norris, 482. The insurance company knew this and contracted with reference to the mode of conducting this peculiar business, and to the relation which the plaintiff sustained with the other owners of oil mixed with his own. If any of the clauses in the conditions of the policy were repugnant to or inconsistent with the company's insuring the plaintiff's petroleum in the situation it was in, the company must, in reason, be held to have waived such repugnant conditions when it undertook the insurance. Where the written and printed portions of the contract are repugnant to each other, the printed form must yield to the deliberate written expression: Harper *v.* Insurance Co., 22 N. Y., 443. It is there held that the intention not to assume a particular risk, "instead of being hid away in printed forms, remote from the principal contract, ought to be found in the deliberate expressions which are made use of at the time when the contract is entered into. Without doubt, all the printed conditions and specifi-

[Grandin v. Insurance Co.]

cations annexed to a policy are, or at least may be, a part of it. But they relate to insurance in general, as practised by the underwriter; and upon, or within, those forms, the parties to each policy actually issued write their own particular intention. The plain meaning of the written part should, therefore, prevail, and other clauses must yield, if repugnant, or they must be so construed as to avoid a conflict of intention . . . . . Contracts which belong to an extensive class, such as charter parties, policies of insurance, &c., where all are in their main features identical, are usually reduced to a prescribed formula, embracing those general provisions which are applicable to most cases of the class, and then printed, leaving blank spaces to be filled up in writing, so as to adapt the contract to the particular case. In construing such contracts, if there is any repugnancy between the written and the printed portions, the latter is to be modified and controlled by the former. In other words, those general provisions which were formed for the class at large, must yield to such as are more specific and designed for the particular case." There are many formulæ in the printed conditions of this policy which are wholly inapplicable to the subject of the contract, and it would be absurd to attempt to give them any effect. The distinct express written contract insured " petroleum his own or held by him in trust for others, or sold but not delivered, while in the custody of the Pipe line." No law or policy forbids such an insurance, and the indemnity in such case enures to the party intended to be protected, and can be recovered in an action by the insured suing as well for himself as in trust for his constituents: Miltenberger v. Beacom, 9 Barr, 198; 1 Phillips on Insurance, § 383; Dunlap's Paley on Agency, 22; Angell on Insurance, § 79; Herkimer v. Rice, 27 N. Y., 163–181; Waring v. Insurance Company, 45 N. Y., 606; Shaw v. Ætna Insurance Company, 8 American Rep., 150 (49 Mo., 578); Bartlet et al. v. Walter, 13 Mass., 267; Oliver v. Greene, 3 Mass. 133; 2 Duer, Insurance, 7, § 6.

*Charles H. Noyes*, for the defendant in error.—The policy alone evidences the contract. It insures the plaintiff, not "for whom it may concern," but for his own "sole, absolute and unconditional" property. The amount of the insurance or of the premium paid is immaterial, in regard to the amount of his property; he can only recover indemnity for his own loss. The question is not between the plaintiff and those who requested him to insure their oil, but between him and the insurance company, in which he insured only his own oil. The company did not agree to insure all the oil which any person might request the plaintiff to consider as included in

11 OUTERBRIDGE.—3.

his policy. ·In point of fact he held no oil "in trust" for others or "sold but not delivered." The policy contemplated that the plaintiff might be receiving and disposing of oil from time to time, and that the insurance should cover it during the time which might elapse between a sale and a delivery. If the policy covers oil of which plaintiff was not sole owner, it is void by its own terms. The condition is in the nature of a warranty, as to a matter existing at the date of the policy, a condition precedent, which being broken at the time of insurance, prevented it from taking effect at all: Murgatroyd *v.* Crawford, 2 Yeates, 420; Inman *v.* Western Fire Insurance Company, 12 Wend., 452; Angell on Insurance, sections 230, 226; Trask *v.* Insurance Company, 5 Casey, 198; Inland Insurance and Deposit Company *v.* Stauffer, 9 Casey, 400; Finley *v.* Lycoming Insurance Company, 6 Casey, 311; Buckley *v.* Garrett, 11 Wright, 204; Citizen Insurance Company *v.* Doll, 6 American Reports, 360; Rohrbach *v.* Germania Insurance Company, 62 N. Y., Reports, 47; Millville Insurance Company *v.* Wilgus, 7 Norris, 107; Kronk *v.* Birmingham Insurance Company, 10 Norris, 300; Harvey *v.* Lord, 10 Federal Reporter, 236; Mers *v.* Franklin Insurance Company, 68 Mo., 127.

. Mr. Justice PAXSON delivered the opinion of the court, June 9, 1884.

. This case is not free from difficulty. The suit was brought in the court below upon a policy of insurance issued by the defendant company to the plaintiff to recover for a loss by fire upon petroleum burned in the Tidioute and Titusville Pipe Line, at the city of Titusville, in June, 1880. The insurance was for "2,500 on petroleum, his own or held by him in trust for others, or sold but not delivered, while in custody of the Tidioute and Titusville Pipe Line Limited" &c. Among the numerous clauses of forfeiture enumerated in the printed portion of the policy is the following: "or if the assured is not the sole, absolute and unconditional owner of the property insured" &c.

The plaintiff sought to recover for 1st, "certain oil in which he had no interest, but which the owners had requested him in writing to insure; 2d, oil of which he was the undisputed and sole owner, and 3d, a large amount of oil in which he had an undivided interest as tenant in common. Upon the case stated, the court below entered a judgment for the plaintiff for only the oil secondly above mentioned.

. That there could be no recovery for the first class of oil is clear. The plaintiff had no insurable interest; he was not a consignee, and had no possession or control of the oil and the

policy was not "on account of whom it may concern;" nor did it contain any clause or expression that would make the company liable without reference to the ownership. The difficulty in the case arises upon the third class, and is mainly owing to the fact that in making this insurance a form of policy has been used evidently intended for another and very different purpose. It contains conditions and stipulations which have no application to the insurance of oil in a Pipe Line. As an illustration, among the conditions which render the policy void are the following: "If the premises insured shall become vacant by the removal of the owner or occupant and so remain for a period of more than thirty days, without notice to the company and consent endorsed thereon;" or, "If petroleum fluid, or crude earth or coal oils . . . . . are kept or used on the premises, except that kerosene oil may be used for lights in dwellings;" or, "If burning fluid or refined earth or coal oils are kept for sale, *stored* or used on the premises in quantities exceeding one barrel at any time without written consent . . . . . this policy shall be void."

We have here a number of conditions which as applied to this particular contract of insurance are meaningless. It would be absurd to attempt to give them any force or effect. The insurance itself is of a peculiar character; the form of policy is one in general use in ordinary contracts of insurance upon ordinary property; many of its conditions are admittedly inapplicable to this kind of insurance. Under such circumstances, when it is attempted to defeat a recovery upon the ground that under one of its conditions the policy is void, we are driven to an examination of the character of the condition and the reason upon which it is founded, in order to ascertain whether it could have been in the contemplation of the parties when the contract of insurance was made. The necessity for this arises from the act of the defendant company in issuing a policy not adapted to the subject matter of insurance, and containing so many incongruous conditions.

The defendant company alleges that the plaintiff was not "the sole, absolute and unconditional owner" of the third class of oil, and as a legal deduction from this fact claims that the plaintiff is not entitled to recover to the extent of his interest.

If the insurance were upon a horse, a house or a stock of merchandise, there would be great force in this position. But does the condition apply to the insurance of oil in a Pipe Line?

In considering this question we must take a reasonable view of the contract. It was evidently one of indemnity. It was for this the plaintiff contracted, and we would not do the

company the injustice even to suggest that it had not the same end in view. The plaintiff paid $250 for his indemnity; under the ruling of the court only 297 barrels of his oil was covered by his policy, worth but little more than the premium which he paid, and the amount for which judgment was entered was $25.53. This is not indemnity; yet if it was what the parties contracted for no one has any cause of complaint. And if the condition in 'question applies to this policy; if it was in the contemplation of the parties when the contract of insurance was made and was intended to apply thereto, the judgment must stand.

Assuming then that this was a contract of indemnity, and was so intended by the parties, we find that the plaintiff is insured on petroleum, "his own, or held by him in trust for others, or sold but not delivered." This clause of the policy is in writing, and must be taken to be what the parties intended; the condition is in the printed portion. The settled rule is that where the written and printed portions are repugnant to each other, the printed form must yield to the deliberate written expression: Harper *v.* The Insurance Company, 22 N. Y. 443. So far, therefore, as this printed condition is applicable at all and conflicts with the written portion of the contract the it must give away to the latter.

But is the condition applicable to this insurance?

There are a number of cases in which the courts have refused to enforce a condition of forfeiture because the case did not come within the reason of such condition. A familiar instance may be given in the condition to be found in most insurance policies that the policy should cease at and from the time the property insured shall be levied on or taken into possession or custody under any proceeding at law or in equity. It has been repeatedly held that this condition was not broken by a levy upon the property insured unless the same was taken into the actual possession of the sheriff, or other officer: Ins. Co. *v.* Berger, 6 Wright, 285; nor where the property insured was levied upon under an execution against a stranger: Ins. Co. *v.* Mills, 8 Wright 241.

It was held by this court in Ins. Co. *v.* Berger, supra, that a mere levy without actual seizure while good as a levy, was not within the meaning and reason of the condition. It was said by Mr. Justice STRONG: "The eleventh condition (execution clause) must have been attached to the policy for at least some supposed substantial reason. Its purpose, doubtless, was to secure the company against any other hazard than that which they first assumed. To them it was important that while the risk continued, the goods should not be taken out of the possession of the assured."

It will thus be seen that where the reason of a condition does not apply this court has refused to apply it. Other instances of the same kind might be cited were it necessary. We are not to suppose that conditions involving forfeitures are introduced into policies by insurance companies, which are purely arbitrary and without reason, merely as a trap to the assured or as a means of escape for the company in case of loss. When therefore a general condition has no application to a particular policy; where the reason which alone gives it force is out of the case, the condition itself drops out with it.

The condition in question refers to the title or ownership; indirectly it bears upon the custody. Where a house or a stock of goods is insured it may be very important to the risk for the company to know whether the insured is sole or only part owner, because the ownership of personal property at least draws to it the custody and possession thereof as an incident. The possession is usually an actual possession. An insurance company might be very well satisfied to insure a stock of merchandise owned by A. and in his actual possession while they might object to insure a stock in which B. was jointly interested with A. for the reason that while they knew A. to be an honest man they might know equally well that B. was a rogue. No such reason applies in this case. The subject matter of this insurance was petroleum. It was not in the possession of plaintiff nor of his other tenants in common. On the contrary it was in the tanks and pipes of the Tidioute and Titusville Pipe Line Company. Here comes in one of the peculiarities of the insurance. It could not be said to be upon any particular oil. The plaintiff's oil was mixed with the oil of other persons. His certificates entitled him to draw out so many barrels of oil; not the specific oil he put in, but an equal quantity of other oil of like value. As was said in Hutchinson v. Commonwealth, 1 Norris 472, "Each barrel of oil in the pipes is the precise counterpart of every other barrel of oil contained therein." It is true this is not set out in the case stated; but it does show that the oil was in the Pipe Line, and the manner of conducting business by the pipe lines in this respect is too public and notorious for us to shut our eyes and pretend not to see it. The whole matter has been before us judicially again and again and we know that individual oil is mixed with other oil in the pipe lines as well as we know that water will run down hill.

While the plaintiff was not the owner of any particular barrels of oil, yet he had the right to draw out of the pipe lines a certain number of barrels of oil. He had such an ownership as was decided in Hutchison v. Com., supra, to be the subject of embezzlement. It was certainly the subject of

insurance. Yet here again the insurance was peculiar; for losses of oil in the pipe lines there appears to have been a liability of assessment upon the remaining oil in the pipes; and it was to protect against this liability that this policy was taken out.

To the extent that the plaintiff held oil in the pipe lines in common with others, he was the owner of such oil to the amount of his interest. Thus if he owned 15,000 barrels in common with B. & C., he would be owner of 5,000 barrels, and as such entitled to draw it out. I do not speak of the form by which this would be accomplished; I refer to the right to the oil; to the fact of ownership, and the right to appropriate it to his own use. To this extent he would be sole owner of his share of the oil; the fact that it is undivided makes no difference; all the oil in the pipe line was undivided; it was mixed with the oil of others, just as his share was mixed with that of his co-tenants. He was therefore the sole owner of certain undivided oil, and the condition of the policy, even if applicable, cannot fairly be held to bar his recovery. There is nothing in the policy which avoids it because the property insured consists of undivided interests, which means merely undivided oil.

We have a right to assume that the parties contracted with reference to the peculiar nature and situation of the subject matter insured. It is not reasonable to suppose the plaintiff was contracting for the insurance of only a few hundred barrels of oil, when he had many thousands ·of barrels in the pipe lines, of which he was undoubted owner. ·He contracted for indemnity, and when the defendant company received his money it is only a fair construction of the contract to hold that the company intended and agreed to indemnify him to the extent of his oil in the pipe lines. This reasonable view is not to be defeated by setting up one of many conditions in the policy, which was probably inserted as applying to other subjects of insurance, and the reason and object of which do not appear to apply to this particular contract. Whatever doubt there may be in regard to this condition must be resolved in favor of the assured. If there is any obscurity in the meaning of the policy it is the fault of the company in not giving it clearer expression; and as between the parties it must be construed most strongly against the insurer.

Assuming that the condition referred to was at least intended for a reasonable purpose, of what possible importance was it to the defendant company, that other parties were interested with the plaintiff in certain of the oil? He was not in actual possession; his co-tenants were not in possession; by no act of his or theirs could the risk be increased, whether

[Stoke *v.* McCullough.]

such act was the result of fraud or mere negligence. The oil was in the pipe lines; it was in the custody of other parties, whose care of it would not be affected by anything the owners might do or leave undone. The case differs essentially from the ordinary one of insurance upon property which is in the manual possession of the insured, and the risk of which may be increased or diminished because of such possession.

We are of opinion that the plaintiff is entitled to recover for the oil which he owned as tenant in common with others.

> The judgment is reversed, and judgment is now entered here for the plaintiff upon the case stated for two thousand five hundred dollars ($2,500) with interest from October 17, 1880, and costs.