# Haws *versus* Fire Association of Philadelphia.

114  431
129  108
130  117
130  119
114  431
167  606
114  431
173   57
114       431
28 SC  572

1. The terms and conditions to which a fire insurance is subject must be such as are reasonably applicable to the kind of insurances upon the particular species of property insured, and such, therefore, as the parties may be presumed to have had in view when the contract was made.

2. The description of a horse, as " contained in the assured's barn," in a policy of fire insurance with a lightning clause attached, insuring said horse, is not a promissory contract or warranty that the horse is to be kept all the time in the barn, and that the policy shall cease to cover it the moment it left the barn.

3. A policy of fire insurance in the usual form used in insuring personal property and real estate to which a clause of indemnity against loss by lightning is attached, upon a horse described as " contained in a barn on the assured's farm, covers a loss of the horse while in pasture on said farm.

4. Grandin *v.* Rochester German Insurance Company, 11 Outerbridge, 26, followed.

October 15th, 1886.     Before GORDON, PAXSON, TRUNKEY and STERRETT, JJ.     MERCUR, C. J., GREEN and CLARK, JJ. absent.

ERROR to the Court of Common Pleas of *Mercer county:* Of October Term 1886, No. 159.

Assumpsit by A. J. Haws against the Fire Association of Philadelphia, on a policy of insurance in said company to recover the amount of insurance on a horse killed by lightning, covered by said policy.     Plea, non assumpsit.

The facts of the case as they appeared on the trial before MEHARD, P. J., appear in the opinion of the Supreme Court.

In the general charge the court instructed the jury *inter alia* as follows:—

[We are brought to the conclusion, in view of this writing made by one party and accepted by the other, which is the law between them in this case, that the plaintiff cannot recover in view of the fact that his property was killed when not in the barn.]     (First assignment of error.)     This seems a hardship, because it is the loss to this plaintiff of his property, but at the same time it would be an equal hardship and an injustice if the defendant were made to pay contrary to the terms of the policy.     [We instruct you, therefore, that your verdict in this case must be for the defendant.]     (Second assignment of error.)

Verdict for the defendant and judgment thereon, whereupon the plaintiff took this writ and filed the above assignments of error.

[Haws *v.* Fire Association of Philadelphia.]

*S. Griffith & Sons* (*E. P. Gillespie* with them), for plaintiff in error.—Plaintiff contends that the clause had reference to the identification or description of the property. The reason of this position is clearly stated by GILFILLAN, C. J., in Holbrook *v.* St. Paul F. & M. Ins. Co., 25 Minn., 222, wherein he construes "all contained in the two-story frame barn, 36x100, ft., situate on sec. 19, etc., Becker county, Minn.," to be "a mere description operating to identify the property and not a promissory stipulation on the part of the insured, nor a condition of insurance on the part of the insurer, that the location mentioned must remain unchanged, or if changed, the insurance should cease or be suspended.

Considering the character of the property in this case—a brood mare—and the season of the year when such stock must run at will, we are brought to the conclusion under the reason of the authority just quoted, that this policy was intended to cover the loss which the plaintiff has sustained. If, however, there is any doubt of the correctness of this construction, such doubt is easily removed by the application of the well settled principle that "if words in a policy are of doubtful signification, that meaning is to be adopted which is most favorable to the assured." Franklin Fire Ins. Co. *v.* Brock, 57 Pa. St. R. 74.

*S. F. Thompson* (*Samuel Redmond* with him), for defendant in error.—The location of property is always an important element in a contract of insurance, and in this instance was of the essence of the risk, for in the warranty of the assured it is expressly stated that the policy shall become void if the risk be increased by any means within the knowledge of the assured. That the risk was increased by change of location of property insured, is evident from the fact that the mare was killed in a field, while the barn was not injured.

It may not be true that it was in contemplation of the parties that the mare should remain in the barn all the time during the year, but it is clear that the parties intended that the risk should attach only when the mare was in plaintiff's barn.

If the character and not the location of property insured, is to be considered "it would extend the effect of a policy to an unwarranted length," and a mare insured in one barn would be covered in any other barn in which she might be placed during the life of the policy.

The learned counsel for the plaintiff argues "that the contract for insurance against lightning is a separate and distinct contract from that against fire intended to cover the loss which the plaintiff has sustained."

[Haws v. Fire Association of Philadelphia.]

It will be observed that the paper in regard to insurance against loss or damage by lightning, bears the same date as the policy, and taken by itself is without meaning. The name of the assured, the consideration paid, the property insured, or the period for which the insurance should continue does not appear therein. It must be taken with the policy as forming one contract, otherwise it is void.

In the light of the decision in the case of the Lycoming Ins. Co. v. Updegraff, 40 Penn. St. 311, it would seem that the plaintiff is not entitled to recover.

Mr. Justice PAXSON delivered the opinion of the court November 15th, 1886.

This was an action upon a written contract of insurance to recover for the loss of a brood mare killed by lightning.

The defendant company had insured a number of the plaintiff's horses against loss by fire. They were described as "all contained in his new two-story farm barn situated on his farm in Hauffield township, Mercer county, Pa."

This policy was in the usual form of fire policies, covering insurance upon either personal or real estate. Attached to it was what has been designated as the "lightning clause," as follows:

"Attached to policy No. 447.840 of the Fire association of Philadelphia. Agency at Greenville, Pa.

"It is hereby specially agreed that this contract insures against any loss or damage caused by Lightning to the property insured, not exceeding the sum insured nor the interest of the assured in the property, and subject, in all other respects, to the terms and conditions of the policy hereby referred to," etc.

The mare referred to was killed by lightning whilst pasturing on a field of plaintiff's farm. The court below instructed the jury that "we are brought to the conclusion in view of this writing made by one party and accepted by the other, which is the law between them in this case, that the plaintiff cannot recover in view of the fact that his property was killed when not in the barn." This ruling forms the subject of the first assignment of error.

It is to be noted that the lightning clause, as it is called, is subject "to the terms and conditions of the policy referred to." What does this expression mean? We think the rational construction of it is that it refers only to such terms and conditions of the policy as are applicable to this particular insurance, that is, insurance against lightning. It would be irrational to apply the terms and conditions of the policy which refer only to insurance upon buildings. Such insurance was not the subject matter of the contract, and the parties cannot

4 AMERMAN—28

by any fair rule of interpretation be presumed to have had
such conditions in view when the Insurance was effected.
In Grandin *v.* the Ins. Co., 107 Penn. St. 26, the insurance
was upon oil in the Pipe Lines, and the company defended
upon the ground in part that the plaintiff was not the "sole,
absolute and unconditional owner" of the oil, as required by
one of the conditions of the policy. This court held that if
the insurance had been upon a horse, a house, or a stock of
merchandise, there would have been some force in the position
assumed by the company; but, for the reasons there given,
ruled that the condition had no meaning or application to an
insurance upon oil in pipe lines. It was said in the opinion
of the court: "We have here a number of conditions which,
as applied to this particular contract of insurance, are mean-
ingless. It would be absurd to attempt to give them any
force or effect. The insurance itself is of a peculiar character;
the form of policy is one in general use in ordinary contracts
of insurance upon ordinary property; many of its conditions
are admittedly inapplicable to this kind of insurance. Under
such circumstances, when it is attempted to defeat a recovery
upon the ground that under one of its conditions the policy is
void, we are driven to an examination of the character of the
condition and the reason upon which it is founded, in order
to ascertain whether it could have been in the contemplation
of the parties when the contract of insurance was made. The
necessity for this arises from the act of the defendant company
in issuing a policy not adapted to the subject matter of insur-
ance, and containing so many incongruous conditions."

The policy, as before stated, describes the property as "con-
tained in his two-story farm barn, etc." Was this intended as
a promissory contract or warranty that the horses were to be
kept all the time in the barn, and that the policy should cease
to cover them the moment they left its shelter? We must
take a reasonable, common sense view of the contract, and by
so doing we shall best arrive at what the parties actually
intended. We have here a farmer insuring his horses against
lightning. He was contracting for indemnity in case his
horses should be killed. He knew, as every man of average
intelligence knows, that the danger from lightning exists
almost wholly in the summer season. That is a period of the
year when stock of all kinds upon farms is kept in the fields
much of the time by day and by night. A policy of insurance
which only covered stock when in the barn would not furnish
indemnity, and no man of common sense would insure in such
a company.

It is true in an insurance upon such personal property as
household goods or a stock of merchandise, the words "con-

[Millerstown v. Frederick.]

tained in a" particular building, would seem to imply that the property insured should remain in such building, and that if removed therefrom, the policy would not cover it. But in such cases the contract contemplates that the property shall remain in the building, and there are obvious reasons why a change of location would affect the insurance. The very nature of such property implies permanency in its location. But it is not so with a man's horse. It is of no use to him if kept in a stable. We can understand that if in a fire policy hay, straw, or grain is insured in a barn, the insurance would cease if removed to some other building. Such would be the reasonable meaning of the contract of insurance, and what the parties probably contemplated when they made it. But none of this reasoning applies to a lightning clause upon horses or other stock. The terms and conditions to which such an insurance is subject must be such as are reasonably applicable to such kinds of insurance upon this particular species of property, and such therefore as the parties may be presumed to have had in view when the contract was made.

This disposes of the first assignment of error. We also sustain the second. It was error to instruct the jury to find for the defendant.

Judgment reversed and a *venire facias de novo* awarded.