## A. J. HAWS v. ST. PAUL F. & M. INS. CO.

### APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF MERCER COUNTY.

Argued October 10, 1888—Decided October 29, 1888.
Re-argued October 14, 1889—Re-affirmed November 4, 1889.
[To be reported.]

1. Where written and printed portions of a contract are repugnant to each other, the printed form must yield to the written clauses of the instrument, as the latter are presumed to be the deliberate expression of the real intent of the parties.

(*a*) A policy of insurance upon a barn, and also upon hay, etc., buggies, etc., and horses, all contained in said barn, was written upon an ordinary fire blank. The printed part contained a provision that it should not cover a loss solely by lightning, but by the written part such loss was included in the risk.

(*b*) There was contained a printed clause to the effect that the policy did not insure personal property while removed from the particular building mentioned, or kept or used in any other place or location, unless otherwise specified in the policy. One of the horses insured was killed by lightning in a pasture field.

2. The printed clause as to removal from the barn was not repugnant to the general purpose of the parties as manifested in the written part of the policy, and on such a policy the insurance company is not liable for the value of a horse killed by lightning elsewhere than in the barn: Haws v. Fire Association, 114 Pa. 431, and American etc. Ins. Co. v. Haws, 20 W. N. 370, distinguished.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK, WILLIAMS and HAND, JJ.

No. 130 October Term 1888, Sup. Ct.; court below, No. 156 June Term 1885, C. P.

On May 23, 1885, A. J. Haws brought assumpsit against the St. Paul Fire and Marine Insurance Company, upon a policy of insurance against fire and lightning. The defendant pleaded non-assumpsit.

At the trial on April 1, 1887, the following facts were shown: The plaintiff was the owner of a stock farm in Mercer county, and engaged in raising thereon finely bred horses. On March 19, 1883, he obtained from the defendant company a policy of insurance to run for three years from March 20, 1883, at noon. The policy was written by filling up a printed blank in the ordinary form of a fire policy, and the material parts of it were as follows, the parts in Italics being written, and the parts in Roman being printed:

" In consideration of *thirty-seven and* 50-100 dollars and of the requirements, limitations and conditions hereinafter contained and hereon endorsed, does insure *A. J. Haws, of Johnstown, Penn'a,* against loss or damage by fire not exceeding the sum of *Twenty-five hundred dollars* on the following specified and located property, namely: $750 *on his frame bank barn, including foundations, situate on his farm in Hempfield Twp., Mercer Co., Pa., about one mile east of Greenville.* $250 *on hay, straw, grain and feed.* $500 *on buggies, sleighs, wagons, harness, whips, robes, blankets, bells and farming tools and utensils of every description.* $1,000 *on horses, not to exceed* $200 *on any one horse. All contained in above described barn. This will also cover against loss or damage by lightning whether fire ensues or not.* $2,500 *concurrent insurance.*"

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

" This policy does not cover or insure personal property of any kind, while removed from the particular building herein described, or kept or used in any other place or location, unless otherwise specified in the policy."

Certain printed conditions or provisions of the policy provided, also, that the company should not be liable by virtue of the policy for any loss caused " by lightning, or explosions of any kind, unless fire ensues, and then for the loss or damage by fire only; . . . . nor for loss or damage caused by removal of property from a building, except it be proved that such removal was necessary to preserve the property." It was also provided that the agent of the company "has no authority to

waive, modify or strike from this policy any of its printed conditions."

On the night of June 8, 1885, a suckling colt belonging to the plaintiff was struck by lightning while in a pasture field on the plaintiff's farm, and on the morning of the 9th was found dead in the field at a distance of 300 or 400 yards from the barn mentioned in the policy. On August 16, 1884, proofs of loss were made out by the plaintiff, claiming from the defendant $100, one half of the sum at which he valued the colt, as the ratable proportion of the loss chargeable to the defendant. Upon the receipt of these proofs payment was declined. The defendant testified that the colt was worth $200. It was admitted that there was concurrent insurance upon the plaintiff's horses, including this colt, of $1,000, and that the other insurance company paid the plaintiff $100, on account of the loss of the colt.

At the conclusion of the testimony, the court, MEHARD, P. J., submitted the case to the jury reserving the question whether the plaintiff was entitled to recover, in view of the following condition of the policy: " This policy does not cover or insure personal property of any kind while removed from the particular building herein described, or kept or used in any other place or location, unless otherwise specified in the policy."

The jury rendered a verdict in favor of the plaintiff for $114.66, subject to the question of law reserved. After argument the court entered judgment for the defendant, non obstante veredicto, MEHARD, P. J., filing this opinion:

The question reserved is whether plaintiff is entitled to recover in view of the following part of the insurance policy: "This policy does not cover or insure personal property of any kind while removed from the particular building herein described, or kept or used in any other place or location, unless otherwise specified in this policy." The property insured was a horse; the building in the policy described and in which the horse was contained, as stated in the policy, was a barn on plaintiff's farm in Hempfield township, Mercer county, Pa. [The horse having been removed from the barn, was in a field when killed. It was not within the insurance of the policy at that time.] [1]

Opinion of the Court.

This case is not covered by the decision in Haws v. Fire Association, 114 Pa. 431. The questions there considered, as stated in the opinion, were: First, What was meant by the expression in the lightning clause attached to the policy, "subject to the terms and conditions referred to;" and second, was the clause "contained in his two story frame barn," etc., intended as a contract that the policy should cease to cover the property insured the moment it left the barn. But neither question can arise under the policy sued on in this action, for both are answered by the explicit clause above quoted.

Judgment is therefore directed for defendant, non obstante veredicto.[2]

Judgment having been entered for the defendant, the plaintiff took this appeal specifying that the court erred:

1. In the portion of the opinion embraced in [ ] [1]

2. In entering the judgment non obstante veredicto.[2]

*Mr. S. B. Griffith* (with him *Mr. Samuel Griffith* and *Mr. E. P. Gillespie*), for the appellant.

*Mr. S. F. Thompson* (with him *Mr. Samuel Redmond*), for the appellee.

OPINION, MR. JUSTICE CLARK:

This action was brought upon a policy of insurance of the St. Paul Fire and Marine Insurance Company, to recover for the loss of a suckling colt, killed by lightning. The plaintiff, A. J. Haws, is the owner of a stock farm in Mercer county, upon which was erected a frame bank barn. The policy of insurance is dated March 19, 1883, and the company by its terms agreed to insure the plaintiff against loss or damage by fire, to an amount not exceeding $2,500 on the barn and its contents. The property insured is classified and recited in the policy, the last item being "$1,000 on horses, not to exceed $200 on any one horse;" and as part of the general description of the personal property, it is added in writing, "all contained in above-described barn." There is a clause in the printed parts of the policy to the effect that the company shall not be liable for loss by lightning, or explosions of any kind, unless fire ensues, and

then for the loss or damage by fire only. But there is a clause written in the policy to a different effect, as follows : " This will also cover against loss or damage by lightning, whether fire ensues or not." In such a case the written clause will, of course, be taken to express the real intention of the parties. The settled rule, as we said in Grandin v. Insurance Co., 107 Pa. 36, is that where the written and printed portions of a paper are repugnant to each other, the printed form must yield to the deliberate written expression, citing Harper v. Insurance Co., 22 N. Y. 443.

There was $2,500 of concurrent insurance, and in addition $1,000 on horses alone. On the night of June 8, 1885, two of the plaintiff's brood mares and this suckling colt were killed by lightning whilst in the field at pasture. Proofs were made claiming one hundred dollars for the loss of the colt ; one hundred dollars having been paid by the company carrying the concurrent insurance.

The policy contains a general printed clause in the following words : " This policy does not cover or insure personal property of any kind while removed from the particular building herein described, or kept or used in any other place or location, unless otherwise specified in the policy." The company contends that as the colt was not in the barn at the time of the casualty, it was not embraced within the terms and conditions of the policy, and that, therefore, there can be no recovery. The plaintiff maintains, however, that the clause last quoted is inconsistent with the manifest purpose of the policy in respect of the insurance of horses ; that to give it full effect is to deny the owner the ordinary use of his property, as well as the privilege of pasturage, which in the summer months, at least, is well known to constitute the chief food supply ; that the clause in question is in the printed form, and is repugnant to the general purpose of the parties, as manifested in the written portions of the policy. We cannot adopt the plaintiff's view of this case. The manifest and obvious purpose of the parties, we think, was to place the insurance on the barn and its contents as specified in the policy. In Haws v. Fire Association, 114 Pa. 431, which is much relied upon by the plaintiff, there was no such clause in the policy as quoted above, and the insurance was upon horses alone. The horses, it is true, were described as " contained in

his new two-story frame barn," etc.; but this was held to be mere matter of description, and that such a description did not constitute a condition which would relieve the company from obligation the moment the horse left the barn. This case is also readily distinguished from the American etc. Ins. Co. v. Haws, 20 W. N. 370, where the insurance was also on horses only, and it was provided as follows: " This policy shall be void and of no effect if the property insured be removed to any other building or location from that described herein." In both of these cases the opinion of the court proceeds upon the ground that as the insurance was upon horses alone, and the contract was inserted into a printed form designed for the insurance of a different class of property, it could not have been in contemplation of the parties that the animals were insured only when inside the barn. In this case, however, the restrictive clause is not a mere matter of description. It is a plain direct provision, applicable alike to all the personal property embraced in the policy, and consistent with the obvious general purpose of the parties to insure the barn and its contents. It may be that such a provision interferes with the ordinary use of the property, but the same may be said of the " buggies, sleighs, wagons, harness, whips, robes, blankets, bells, farmer's tools, and utensils of every description," which do not appear to have been kept in store, but for the ordinary and common use of the owner.

For anything that appears, the insurer, on the one hand, may have relied upon the location or structure, or upon the appliances attached to the building, as a protection from lightning, and estimated his risk accordingly ; or, the owner, on the other hand, knowing the fact that barns are, for some reason, not well understood, more liable to injury from lightning than other buildings, and that the risks from this cause attaches as well to the contents as to the building itself, contemplated an indemnity only as against this extraordinary risk. However this may be, in view of the explicit and plain language of the policy, we are constrained to hold that the restriction applies to the horses, as well as to the other property embraced in the policy.

The judgment is affirmed.

DISSENTING OPINION, MR. JUSTICE PAXSON:

I regret that a broader view has not been taken of this case.

We have decided in a number of instances that where a policy
of insurance contains a printed clause which is not applicable
to the particular class of insurance covered by the policy, such
clause is not binding upon the assured in case of loss. The
reason for this ruling is, that it could not have been in the con-
templation of the parties at the time the contract of insurance
was made: Haws v. Fire Association, 114 Pa. 431. We ac-
cordingly held in that case that an insurance of a horse as
" contained in the assured's barn," covered the horse when in
the assured's pasture field. The reason of this is plain. The
only season of the year when horses are exposed to lightning
is in the summer, when it is well known that farmers' horses
are in the field for a considerable portion of the time. Hence,
it is not reasonable to suppose that the parties to the contract
intended that a printed form in a fire policy, intended to apply
to a different matter, should be applied to defeat the insurance.

In the case in hand the insurance was of personal property
contained in a barn, with a lightning clause added. The policy
was in the usual form, with a clause that the policy should not
cover any of the property while removed from the barn. This
was all well enough for the inanimate property in the barn.
But the lightning clause was intended for the horses. No one
insures hay, grain, and farming implements from lightning.
I concede the clause against removal technically covers the
horses. But I still think that as to the horses insured by light-
ning, it was never intended to apply; and was not and could
not have been in the contemplation of the parties at the time
of the making of the contract, assuming them to have been
reasonable beings capable of making a contract. I would
reverse this case.

Justices GREEN and WILLIAMS request me to say that they
concur in the foregoing.

On January 21, 1889, the court, on petition of the appellant,
ordered a re-argument. In pursuance of this order the case
was argued on October 14, 1889, before PAXSON, C. J., STER-
RETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCH-
ELL, JJ.

*Mr. S. B. Griffith* (with him *Mr. E. P. Gillespie* and *Mr.
Samuel Griffith*), for the appellant:

1. The contention in this case arises entirely from the negligence of the defendant company in making a contract of indemnity against loss from lightning, upon a printed blank prepared for fire insurance only, and containing an almost innumerable array of conditions, any one of which will always conflict with any kind of insurance other than that for which the blank was prepared. It is plain from its conditions, that the blank was intended to be used in insuring buildings and inanimate personal property, against loss or damage by fire and fire only. The contract of indemnity in a policy of insurance is the written contract; and any printed conditions or stipulations which detract from the full measure of the indemnity contracted for, are void and of no effect: Grandin v. Insurance Co., 107 Pa. 26; Haws v. Fire Association, 114 Pa. 431.

2. If these printed conditions have any effect on the contract of indemnity when repugnant to it, then our recovery should be defeated because the colt was killed by lightning, with far more reason than because it was removed from the building in which it was insured. The printed clause of forfeiture on which the court below ruled the case, is repugnant to the written contract for indemnity and must fall: Harper v. Insurance Co., 22 N. Y. 443. It is equally as repugnant as the printed conditions which this court refused to enforce in Grandin v. Insurance Co., 107 Pa. 26; Haws v. Fire Association, 114 Pa. 431, and American etc. Ins. Co. v. Haws, 20 W. N. 370. To give effect to it is practically to destroy the indemnity against lightning for which the plaintiff paid, for all the world knows that brood mares and suckling colts are never kept in barns in summer, but run in pasture, and the summer is the only time when there is danger from lightning.

3. It was for the animate property, the horses, that the lightning clause in this policy was intended, for the evident reason that the damage which lightning, not followed by fire, would do to the other personal property insured would be but trifling, while it kills a horse whether followed by fire or not. If this provision was not intended for the horses and for them alone, it was surplusage; and if it was intended for them, it must override a printed condition evidently intended for another kind of property. All the other conditions of the policy show that the printed clause, respecting removal from the building,

had reference to the kind of property that would generally be insured in that kind of blank, namely, inanimate property. But the words, "unless otherwise specified in the policy," show that it was contemplated that agents might sometimes insure property to which that condition is inappropriate, and should then be free to bar its operation.

4. We submit that this policy shows a special contract by which the operation of the condition was barred as to the horses; that the written clause insuring against loss by lightning, whether fire ensues or not, was intended particularly for the horses, and was designed to cover them in the only place where experience teaches they were in danger from lightning not followed by fire, that is outside the barn. Whoever heard of a horse being killed by lightning in a barn without the barn being burnt? The condition in this case is not so strong as that in American etc. Ins. Co. v. Haws, 20 W. N. 370, for the words, "unless otherwise specified in the policy," were missing from the policy in that case. Under these words the agreement for indemnity against lightning furnishes all that is required, if anything is, to render the forfeiture clause of no effect.

5. If this policy had been solely upon the horses, with all the printed conditions as they are, this court, following the line so clearly laid down in the cases we have cited, would have held the condition inoperative. Why should the fact that there are two kinds of property insured in this policy make any difference? Is it impossible to insure two kinds of property in the same policy and give to each its proper protection? Shall the rules and conditions governing inanimate property always override those governing animate property, when both are covered by one policy, no matter how small the amount of the former and how large that of the latter? If a clause destroying part of the protection bargained for, is of no effect when the insurance is on one kind of property, but, when an article to which the clause relates is introduced, the clause then becomes binding, not only on that article, but upon everything else, the law is not certain, as it should be, but we have a sliding rule for the construction of the same condition.

*Mr. Samuel Redmond* (with him *Mr. S. F. Thompson*), for the appellee:

1. Parties have unlimited power to make such bargains respecting insurance as they please: 2 Parsons on Cont., 351; Contracts on this subject will be enforced as made: Commonwealth Ins. Co. v. Sennett, 37 Pa. 205. Clearly expressed stipulations are not to be defeated by construction: 2 Parsons on Cont., 500; Shafer v. Senseman, 125 Pa. 310. The policy is the law of the legal relations of the parties, by which their mutual rights and liabilities are to be measured: Weisenberger v. Insurance Co., 56 Pa. 442. Its words are to be construed in their plain, ordinary and popular sense: Robertson v. French, 4 East. 135. There is no ambiguity in the language of the policy under consideration, and the interpretation given it in the court below is the only reasonable one its language will bear; any other is simply the product of the imagination. Out of every 100 men who understand the English language, 99 would probably say, on reading the policy, that the judgment of the court is correct. If it is wrong, the law of insurance in Pennsylvania is a greater snare than the laws of Caligula.

2. The company had a right to contract for a limitation of the risk to the location where the property was, at the time the insurance was effected: 2 Parsons on Cont., 428. The policy makes no distinction between animate and inanimate property. It unequivocally excepts out of the risk property of "any kind" while removed from the specified building. Suppose the plaintiff hauls his grain to market, in his own wagon with his own horses; and that while at the market town all are destroyed by fire. What reason is there for the distinction the plaintiff attempts to draw between the horses, on the one hand, and the wagon and grain, on the other? Was not the wagon made for use, and the grain raised to be marketed? Was it not in contemplation that they could not always remain in the barn? In fact, the argument of the plaintiff, based upon the "peculiar nature" of the horses, is equally applicable to the wagon and grain, and is an attempt to get rid of the plain contract in the policy by a metaphysical jargon.

3. Certainly a line of distinction is not to be drawn between animate and inanimate property, in the construction of policies, for in Grandin v. Insurance Co., 107 Pa. 26, cited by the plaintiff, the property was petroleum in a pipe-line. Can a different

rule apply when the loss is caused by lightning, from that applied when it is caused by fire? This would be absurd. Persons and animals have often been killed by lightning while in buildings, and it is common practice among insurance men to limit lightning risks to animals when in buildings. Had the contract been that the risk attached to the horses outside the barn, it would have been specified that it should continue while they were on the plaintiff's premises, as all insurance companies are accustomed to do in such cases. It was not contemplated that the horses, wagons, etc., should remain in the barn all the time, but it is clear that the risk was to attach only while they did: 2 Parsons on Cont., 428; Pearson v. Commercial Ass'n, 9 Law Times, N. S., 422.

OPINION, MR. JUSTICE CLARK:

In view of the diverse opinions entertained when this cause was here before, we ordered a re-argument. The re-argument has not resulted, however, in effecting any change in the judgment then entered. The Court, although somewhat differently constituted, by a majority is not inclined to recede from, but rather to adhere to the views then expressed in the opinion filed. We do not think it necessary to add anything to what was then said.

The judgment is therefore re-affirmed.