Cummins v. German American Insurance Company of New York.

197   61
214   297

*Insurance—Fire insurance—Proofs of loss—Estoppel.*

If the insured in good faith and within the stipulated time does what he plainly intends as a compliance with the requirements of his policy as to proof of loss, good faith equally requires that the company shall promptly notify him of their objections so as to give him the opportunity to obviate them ; and mere silence may so mislead him to his disadvantage, to suppose the company satisfied, as to be of itself sufficient evidence of waiver by estoppel.

Where an insured furnishes proof of loss of a barn sixty years old, and subsequently in response to a request for verified plans and specifications promptly writes to the company that owing to the age of the barn it was impossible for him to give verified plans and specifications, but encloses

a verified statement of the size, arrangement and condition of the barn at the time of the fire as nearly as he could do so from memory, and the insurance company makes no objection to this letter, it is estopped at the trial from alleging the insufficiency of the proof of loss.

*Insurance—Policy—Evidence.*

Where a policy of fire insurance is on a " barn including sheds and additions attached," the insured may prove by parol evidence that both the insured and the insurer at the time the insurance was effected understood that certain sheep and hog pens were embraced in " shed and additions attached."

Argued April 17, 1900.     Appeal, No. 8, Jan. T., 1900, by defendant, from judgment of C. P. Huntingdon Co., Feb. T., 1898, No. 18, on verdict for plaintiff, in case of S. W. Cummins v. German American Insurance Company of New York.    Before GREEN, C. J., McCOLLUM, DEAN, BROWN and MESTREZAT, JJ.    Affirmed.

Assumpsit on a policy of fire insurance.    Before BAILEY, P. J.

The facts appear by the opinion of the Supreme Court.

The court admitted under objection and exception proofs of loss, including the letter of November 12, 1897, quoted in the opinion of the Supreme Court. [1]

When plaintiff was on the stand he was asked this question:

" Q. You say Mr. Oaks was the local agent that took this insurance?   A. Yes, sir.   Q. What did you say to Mr. Oaks about these sheds being attached to the barn immediately before you obtained the policy and at the time you made the contract with him for the policy? "

Mr. Woods: Objection, on the ground that whatever the conversations were between the witness and Mr. Oaks were reduced to writing and are in the terms of the policy, and any other conversations that are not in the terms of this policy not being left out by accident, fraud or mistake, they cannot be added now.

The Court: Objection overruled.   Evidence received.   Bill of exceptions sealed for defendant. [2]

" Q. (Judge Furst): Now state, Mr. Cummins, what you said to the agent at the time at which this policy was applied for with reference to having these sheds insured.   Just what you said and what Mr. Oaks said to you.   A. I explained to

him just how these buildings were situated and also the policy I had on my buildings. I took $200 off the house."

Objection.

" (continued): A. I explained how these buildings were situated and how attached to the barn, and he assured me this policy covered the sheds. Q. What sheds did your policy cover? A. These two sheds; they were all the sheds there; there were no other sheds— Q. Are there any other sheds attached to the barn? A. No, sir; no other sheds near the barn."

Cross examination:

" Q. (Mr. Woods): Did you tell him there was a driveway between the sheds and the barn? A. Yes, sir; I explained just how they were situated. Q. Did you tell him there was a driveway fourteen feet wide? A. I don't recollect whether I told him the distance. Q. Did you tell him they were only attached by bars? A. Yes, sir; I told him how they were attached; I don't know that I told him the distance. Q. Did you tell him the size of the sheds? A. Yes, sir. Q. That one was a large building? A. It was not a large building. Q. Thirty feet long? A. Yes, sir; fifteen feet wide. The loft held two loads of hay; it is not a very large building. Q. You say you told him? A. Yes, sir. Q. Did you tell him about the corncrib and wagon shed? A. No, sir; they were not near the barn; not near enough to burn from the barn. Q. How far were they off? I suppose fifty to sixty feet; somewhere along there."

Verdict and judgment for plaintiff for $1,562.61. Defendant appealed.

*Errors assigned* among others were (1, 2) rulings on evidence, quoting the bill of exceptions.

*W. H. Woods,* for appellant.—It was the duty of the insured to furnish sufficient proofs of loss: Langan v. Royal Ins. Co., 162 Pa. 357.

*A. O. Furst,* with him *J. D. Dorris,* for appellee.—Where there is a total destruction of the property, such as in this case, and immediate notice has been given the company, there is no necessity for any other or specific proof of loss : Penna. Fire Ins. Co. v. Dougherty, 102 Pa. 568.

The company was estopped from alleging at the trial any insufficiency of proof of loss : Gould v. Dwelling-House Ins. Co., 134 Pa. 588; Moyer v. Sun Ins. Co., 176 Pa. 579.

OPINION BY MR. JUSTICE BROWN, July 11, 1900 :

The German American Insurance Company of New York issued its policy of insurance to S. W. Cummins on January 6, 1896, on his barn and the sheds and additions attached thereto, situated in Jackson township, Huntingdon county. The amount of the insurance was $1,400. On September 16, 1897, the barn, together with the sheep and hog pens, was totally destroyed by fire. Immediate notice of the loss was given to the company, and, on October 16, 1897, the assured, upon demand by the former, furnished it a statement of the property destroyed and its value. This proof of loss was not satisfactory to the appellant, and, on November 1, 1897, Cummins was notified to furnish it " verified plans and specifications of the building in accordance with the conditions of the contract, . . . . and . . . . a detailed account of lumber, etc., used in the construction of this barn and the prices paid therefor." On November 12, 1897, the assured in response to the demand so made upon him on the first of the month, sent an additional proof of loss to the company, his letter enclosing the same being as follows:

"HUNTINGDON, PA., November 12, 1897.
" Mr. GEO. J. McCAFFREY,
" Adjuster, The German American Ins. Co. of N. Y.
" 21 So. Holliday St., Baltimore, Md.
" Dear Sir. Your letter of 1st inst. to my attorneys, Furst & Dorris, was misdirected and went to Philada., Pa., instead of to Huntingdon, Pa., so that it did not reach them until the 9th inst. The barn on my farm, which was totally destroyed by fire, as stated in the formal ' Proof of Loss ' already furnished your company, had been built a number of years when I purchased the farm in the fall of 1892. I do not know when the barn was built, or by whom, and it is therefore impossible for me to give you verified plans and specifications in detail with prices. I enclose herewith a verified statement of the size, arrangement and condition of the barn at the time of the fire, as nearly as I can do so from memory. I have no data to follow and no means of obtaining any that I know of. I also enclose

plans and specifications (verified) of the sheep and hog pens which were totally destroyed.

"Truly yours,
"S. W. CUMMINS."

The foregoing letter was received by the company on November 16, 1897. When this case was here before (192 Pa. 359), we held that the additional proof of loss had been furnished in time. In its demand for a more detailed statement or proof of loss, the company demanded a detailed account of lumber, etc., used in the construction of the barn, and the prices paid for the same. The barn had been constructed nearly sixty years before its destruction by the fire in 1897, and the assured could not have furnished an account of the lumber used in its construction more than half a century before, and the prices that had been paid for the materials used. He did, however, after explaining the delay in receiving the notice for additional proof of loss, notify the company that the barn had been built for a number of years before he purchased it in the fall of 1892, and that, as he did not know when it was built, or by whom, it was impossible for him to furnish verified plans and specifications in detail, with prices. He then proceeded to furnish a verified statement of the plans and specifications, as nearly as he could from memory, stating that he had no data to follow and no means of obtaining any that he knew of. He also enclosed plans and specifications of the sheep and hog pens, which were totally destroyed. No objection to the sufficiency of this proof of loss was ever made by the company to the assured until its alleged insufficiency was set up on the trial as a defense. The learned trial judge, under the undisputed facts in the case, and with the proof of loss submitted to him, properly charged the jury: "If the plans and specifications so furnished were not, in the opinion of the officers of the company, a compliance with the conditions of the policy, it was its duty not to retain them, but to return them to Mr. Cummins, stating the objections they had to its sufficiency. Instead of doing that, the uncontradicted evidence in the case is that the company retained them and made no objections to the assured on account of insufficiency. The company, by such conduct, has waived the right it may have had to require a stricter compliance with the

terms of the policy on the part of the insured in that regard. It cannot wait without making any objections or setting up any defect in the proofs of loss until the time of the trial of the case in court. Therefore, we say to you as far as that branch of the case is concerned, Mr. Cummins had a right to bring this suit."

When it is remembered that the building destroyed had been erected nearly sixty years before its destruction, it can be well understood why Cummins wrote that it was impossible for him to furnish verified plans and specifications and to state what the materials used in the construction of the barn had cost. His letter to the company, enclosing the additional proof of loss, was frank, indicating good faith on his part, and he was fully justified, by the silence of the company, in believing that it was satisfactory, and that nothing more would be required of him. When, for the first time, objection was made on the trial to the sufficiency of the second proof of loss, this complaining company was promptly and properly reminded of the rule as laid down in Gould v. Dwelling-House Insurance Co., 134 Pa. 570, which it seems to have forgotten: "If the insured, in good faith, and within the stipulated time, does what he plainly intends as a compliance with the requirements of his policy, good faith equally requires that the company shall promptly notify him of their objections so as to give him the opportunity to obviate them; and mere silence may so mislead him to his disadvantage, to suppose the company satisfied, as to be of itself sufficient evidence of waiver by estoppel."

As to the sheep and hog pens, we need only repeat what we said about them before (192 Pa. 359): "The court left it to the jury to determine whether the sheep and hog pens were part of the barn building. . . . A careful examination of the evidence convinces us this was a question of fact for the jury, and the court could not have properly done other than submit it to them."

The testimony of the plaintiff and Oaks as to what was said about these pens at the time the policy was written was properly received by the court. The insurance was on the "barn, including sheds and additions attached," and it is so written in the policy. The plaintiff did not undertake to show by his own testimony or that of Oaks that he was to be paid for prop-

erty that had not been included in the policy. Their testimony was not that anything had been omitted from the contract by fraud, accident or mistake. They simply proved that both the insured and the insurer, at the time the insurance was effected, understood that the pens were embraced in " sheds and additions attached."

The record in this case is entirely free from error. It was carefully and properly tried by the learned trial judge in the court below, and the jury, having been intelligently instructed, found against this appellant, which has come before us with no just cause of complaint. The assignments of error are all overruled and the judgment is affirmed.