## McConnell v. Merchants & Businessmen's Mutual Fire Insurance Company

*Robert M. Gilkey*, for plaintiff.
*Brockway, Whitla & McKay*, for defendant.

ROWLEY, P. J., June 23, 1944.—This matter is before the court on plaintiff's motion for judgment for amount admitted to be due and for judgment for want of a sufficient affidavit of defense as to the remaining amount claimed.

Subsequent to the foregoing motion by plaintiff, defendant moved for leave to amend its affidavit of defense. As the motions were argued simultaneously we shall consider both in a single opinion.

Plaintiff owned and operated a gasoline filling and automobile service station at 715 West Main Street, Grove City, Pa. The principal structure upon the premises was a one-story frame, composition-roofed building occupied as a filling station and dwelling. There was also upon the premises a one-story frame building about 10 feet by 18 feet in size, called a covered grease pit. The smaller building was 7½ feet distant from the filling station and was accessible to the patrons of the filling station, and was operated in connection with said service station. A conduit carrying electric current extended from the filling station to the grease pit. Certain tools, equipment, and a stock of grease and oils were kept in the small structure.

Defendant company issued to plaintiff its policy insuring him against direct loss and damage by fire to the following described property:

"$1500.00 on the one-story frame composition roofed building and additions thereto, adjoining and communicating, occupied as a filling station and dwelling and for purposes incident thereto . . . situated at No. 715 West Main Street, Grove City, Mercer County, Pa.

"$2500 on stock consisting principally of greases, oil, tires, tobacco, candy and on stock materials, and stock supplies . . . ; all while contained in the above described building and additions thereto, adjoining and communicating, or in show windows and show cases, or on sidewalks, streets, alleys or detached platforms, when within 50 feet of buildings described in policy, or in the open on premises."

On March 4, 1943, while said policy was in force, a fire occurred which damaged the covered grease pit to the amount of $400, destroyed stock and equipment

contained in that structure, to the amount of $627.04, and damaged the main building to the amount of $150.

Thereafter plaintiff brought this suit, averring that defendant had insured the structures and contents, that they had been damaged by fire, and that defendant refused to reimburse plaintiff.

By its affidavit of defense defendant admits its liability for the damage of $150 to the larger structure, but it denies that it insured the smaller building or its contents.

An inspection of the policy discloses that defendant insured "the one-story frame, composition roofed building and additions thereto, adjoining and communicating, occupied as a filling station and dwelling and for purposes incident thereto . . . situated at No. 715 West Main Street, Grove City, Mercer County, Pa."

The policy also insured stock "while contained in the above-described building and additions thereto, adjoining and communicating".

Defendant's denial that it insured the smaller structure and contents seems to rest upon the contention that the grease pit was not an "addition" because it was not physically attached to the building specified in the policy. Perhaps the term "addition" in normal use implies contact. But, as pointed out by plaintiff, the Superior Court, in Seeds v. Royal Ins. Co. et al., 75 Pa. Superior Ct. 302, held that the term "addition" as used in a policy of insurance is not equivalent to the words "additions attached". The court said (p. 304) :

"The words 'addition', or 'additions' may and often do apply to buildings appurtenant to some other building, though not in physical contact therewith."

In the Seeds case the court implies that the insurer had the duty to "state the facts with particularity which would show that this building on the rear of the lot is separate and distinct from that on the front". The court concludes (p. 305) :

"It would certainly not be held that a building appurtenant to the main building and separated merely by a short space would not be covered by the words 'additions.' "

The contents of the affidavit of defense in the Seeds case are not set out in the opinion of the Superior Court. Apparently it included an averment that the policy applied only to a building not damaged, and an averment that the damaged building "was not connected in any way or manner whatsoever" with the building specified in the policy.

In the instant case defendant denies that it insured the grease pit or the contents thereof. Such a denial, without more, would normally present a question of fact. But defendant goes further and avers in substance that the pit and contents were not insured because the pit was separated from the principal building. This averment precipitated a question of law which in the Seeds case seems to have been determined adversely to the contention of the instant defendant.

In its supplemental affidavit of defense, defendant avers that when "the said policy was transferred to plaintiff" defendant's agent explained to plaintiff that the policy did not cover the grease pit, and that the parties understood that the words "additions thereto, adjoining and communicating" did not include the grease pit or its contents.

This averment gives rise to the question whether such averments may be proved in the face of the parol evidence rule and, if not, whether the court should enter judgment for want of averments admissible in evidence.

As there is no averment that this agreement between the parties was in writing—it should have been made part of the affidavit if it was—it will be assumed that it was an oral "understanding": Pennsylvania Co., etc., to use, v. Lebanon B. & L. Assn., 337 Pa. 316, 318. There is no averment that the oral understanding was

omitted from the writing by fraud, accident, or mistake. In these circumstances, should the court at this juncture determine the admissibility of the alleged oral understanding?

We think the question cannot be answered categorically. It has been variously held that judgment should be entered for plaintiff where the defense would not be admissible under the parol evidence rule; also that the parol evidence rule is not a rule of pleading and is not to be raised on a rule for judgment for want of a sufficient affidavit of defense.

In Madison-Kipp Corp. v. Price Battery Corp., 311 Pa. 22, judgment for want of a sufficient affidavit was affirmed where defendant, who had purchased a machine under a written contract, set forth "the oral understanding that the machine would turn out four perfect grids per minute . . ." The Supreme Court said (pp. 25, 29) :

"If Price had failed on any understanding, warranties, or agreements made prior to the execution of the written contract, they should have protected themselves by including in the written agreement the promises upon which they relied . . .

"While it is the rule of these cases that a summary judgment should be entered only when the affidavit of defense clearly presents no meritorious defense, nevertheless when the affidavit does not present a legal defense to plaintiff's claim, judgment should be summarily entered, in the interest of the speedy administration of justice."

In Architectural Tile Co. v. McSorley, 311 Pa. 299, an action upon a trade acceptance, defendant averred an oral agreement "alleged to have been made at the time the instruments in question were executed, to the effect that payment would not be demanded until the buildings for which the materials were furnished had been 'adequately financed . . .' "

Plaintiff moved for judgment for want of a sufficient affidavit of defense. Defendant argued that this motion admitted the existence of an oral agreement. The court declined to adopt defendant's view, stating (p. 301) : " 'such parol agreement though made at the time is inadmissible in evidence to vary the effect of a written contract'." Continuing, the court declared (p. 301) :

"We have repeatedly stated that a strict compliance with the rule excluding evidence of this character is necessary to uphold the integrity of written instruments."

Accordingly, a judgment for plaintiff was affirmed.

But in Friend, Conservator, v. Kuhn, 316 Pa. 233, the court refused judgment for want of a sufficient affidavit of defense. In a suit upon a promissory note, defendant averred that she had executed the note upon the bank's representation that it was a matter of form only and that she would not be liable thereupon. Plaintiff argued that the defense was unavailing because of the parol evidence rule. But the Supreme Court declared (p. 235) :

"That rule, which is a principle applying to the admissibility and effect of oral evidence, can have no applicability in the present stage of the case, however, when questions relating to the admissibility and effect of evidence have not yet arisen. How and by whom they will be proved is not required to be set forth in the affidavit; presumptively they will be proved as required by law. If the facts specified, if proved by the proper quantum and quality of proof, and if believed by the court and jury, will suffice to defeat plaintiff's claim, the affidavit is sufficient. Defendant 'is not required in his affidavit of defense to set forth the manner in which the facts therein alleged will be proved, nor the evidence by which they will be substantiated'. . . . Whether or not the evidence when produced will

measure up to the requisite standard, will be known only when it is in fact produced at the trial."

In the preceding case the court implied that it might be assumed either that defendant would produce written evidence of the supplemental agreement or that defendant would concede the existence of an oral understanding.

But it seems to us that the effect of the Friend case, supra, was considerably weakened by Germantown Trust Co., Guardian, v. Emhardt (No. 1), 321 Pa. 561.

In this latter case the court explained the Friend case by the statement that (p. 565):

"The opinion in the Friend case discloses that in her affidavit of defense defendant set up that her signature to the note sued on was procured by fraudulent misrepresentations. It is therefore clear that the case is in harmony with our settled rule, and in line with the decisions of this court above referred to. However, we do not regard Friend v. Kuhn, supra, as controlling in cases of this character."

In the Germantown case the Supreme Court directed judgment for plaintiff upon his motion for judgment for want of a sufficient affidavit of defense. Plaintiff sued to recover upon defendant's written agreement guaranteeing payment of a mortgage. Defendant admitted execution of the agreement but averred that plaintiff's officers induced him to sign the guaranty by assuring him that "in no event would he be held individually liable upon the agreement nor would plaintiff look to him for payment".

The court said (p. 564):

". . . there is no allegation by defendant that the execution of the extension agreement was procured by any fraud practiced upon him, or as a result of any accident or mistake on his part. This is a fatal omission. In the absence of such an allegation defendant's averment of a parol agreement which destroys the vitality of the written contract does not constitute a sufficient

defense . . . 'where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be . . . the only evidence of their agreement'. . . . 'All preliminary negotiations . . . are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence.' . . . 'Any parol agreement that subjects the obligation on the instrument to any condition or contingency, whether in person, time or amount, is ineffective, and the instrument is unconditional, unless fraud, accident or mistake was the means through which the instrument was procured.' "

Notwithstanding the comment of the court in the Germantown case that "we do not regard Friend v. Kuhn, supra, as controlling in cases of this character", the Supreme Court in Federal Reserve Bank of Phila. v. Gearon, 331 Pa. 65, again cited the Friend case.

In the Gearon case the obligor in a mortgage bond obtained an order to open the judgment thereon by the representation that when she executed the bond one of the obligees assured her that (p. 66) "she would be subjected to no liability or responsibility because of signing . . ."

The distinguishing feature of the Gearon case is that the original obligee admitted the oral representation claimed by the obligor.

In Pennsylvania Co., etc., to use, v. Lebanon B. & L. Assn., 337 Pa. 316, plaintiff, as assignee, sued upon a written agreement for the extension of a mortgage. Defendant filed an affidavit of defense averring that (p. 318) "at the time the extension agreement was executed it had been understood and agreed by the parties to it, that defendant's obligation to pay, created by the agreement, was an obligation to the legal plaintiff only and one that the legal plaintiff would not assign."

Commenting upon the affidavit of defense, the Supreme Court said (p. 319):

". . . it is sufficient to say that there is no averment that this oral understanding was omitted from the writing by fraud, accident or mistake without which it could not be proved and therefore cannot be considered a defense."

It will be conceded that the parties have always a right to put their own construction on their writing, and, in case of doubt as to the intention expressed therein, such mutual construction is the one which will be adopted by the court, though it might not be the one which would have been adopted from an inspection of the writing alone. Such construction may be shown by evidence of acts, declarations, or circumstances relating to the transaction, and which took place at the time of, or subsequent to, the execution of the writing: Cummins v. German American Insurance Company of New York, 197 Pa. 61.

But every writing must be interpreted according to its subject matter; and if there is a subject matter in existence that satisfies all the terms of the writing parol evidence cannot be admitted to show that something else was intended. If, however, the nature, quality, or condition of the subject matter is not clearly expressed, it is proper to resort to parol evidence to supply the deficiency. Such proof does not contradict the writing, but merely aids in the proper interpretation of it.

But it must be observed that it is only where there is some ambiguity in the contract that the parties' own construction becomes important: Lenox Coal Co. v. Duncan-Spangler Coal Co., 265 Pa. 572.

A party may not create an ambiguity in the contract by parol testimony when no ambiguity exists in the writing: Dahath Electric Co. v. Suburban Electric Development Co., 332 Pa. 129.

The question which confronts us in the instant matter is not simple of solution. If we adopt the conclusion of the Friend case, that the question of the admissibility of the alleged oral agreement (p. 235) "can have no applicability in the present stage of the case" (upon motion for judgment for want of a sufficient affidavit of defense), we should be required to permit the amendment of the affidavit of defense, especially so because of the liberal policy of the law to permit amendments to pleadings where such do not impose undue hardship upon the opposing party.

If the amendment be allowed, then are we (notwithstanding doubt as to its admissibility) required to accept the averments therein as verity? Kingston Coal Co. v. Glen Alden Coal Co., 312 Pa. 546, 554.

On the other hand, if we give full effect to the declaration of the court in the Germantown case, supra, that the Friend case is not controlling in cases of this character, we shall be obliged to consider whether defendant's averment as to the oral agreement is admissible in evidence despite the parol evidence rule.

There is no averment by defendant of fraud, accident, or mistake; therefore oral testimony is not admissible to reduce the risk below that described in the policy. If an insurer might offer oral evidence to restrict the risk, there would be equally good reason to permit the insured to extend the risk beyond that described in the policy. Certainly, no insurer would contend for such a principle.

Our clear impression is that, if the policy identifies the risk, there is no place for oral testimony upon the point. The tendency of modern decisions is to strictly apply the parol evidence rule. Some of the earlier cases had refined that rule almost out of existence.

In Speier v. Michelson, 303 Pa. 66, the court undertook to rehabilitate the parol evidence rule, declaring that the result of earlier liberality in applying the rule

(p. 70) "was not to open but to break down the door which barred the admission of oral evidence to vary a writing".

In applying earlier decisions upon the point, it is important to have in mind the following from Speier v. Michelson (p. 69) :

"The Parol Evidence Rule was steadily widened so that almost any promise was sufficient to invade the security of a written contract."

The first effective steps on the road back to the rule were taken in 1924 in Gianni v. R. Russell & Co., Inc., 281 Pa. 320, and consequently some of the decisions prior to 1924 are not a reliable guide.

Two principles of law pertinent to the instant discussion are clearly established, viz:

1. " 'A written instrument is always open to explanation, even by parol or extrinsic evidence, where it is fairly susceptible of two constructions, or where its meaning is obscure or ambiguous [citing cases]' ": Dorrington et al. v. Manning et al., 135 Pa. Superior Ct. 194, 200.

2. "An unambiguous written contract cannot be varied by parol in the absence of showing that what is sought to be read into the contract was omitted by fraud, accident or mistake:" Dehath Electric Co. v. Suburban Electric Development Co., 332 Pa. 129 (syllabus).

As authority for admission of an oral agreement, defendant cites Cummins v. German American Insurance Company of New York, 197 Pa. 61, where the court permitted the insured to testify that a fire insurance policy on a "barn including sheds and additions attached" was understood by both parties to embrace sheep and hog pens which were in fact attached to the barn.

In the Cummins case the Supreme Court pointed out that (p. 66) :

"The insurance was on the 'barn, including sheds and additions attached,' and it is so written in the policy.

The plaintiff did not undertake to show by his own testimony or that of Oaks that he was to be paid for property that had not been included in the policy."

The instant policy insures "the one-story frame, composition roofed building and additions thereto, adjoining and communicating."

If this description of the risk excludes the grease pit, the alleged oral understanding is unimportant. If the above description comprehends the grease pit, any oral agreement to the contrary would be inadmissible. If the description in the policy is ambiguous, capable of two interpretations, the understanding of the parties may be proved by parol.

In any event it seems we must first determine whether the policy is understandable without recourse to extrinsic evidence.

In attempting to construe the written description of the risk, we take note that

" 'An agreement is the assent of two minds to the same thing. It should be construed in the light of the facts and circumstances under which the parties contracted. These form a sort of context that may properly be resorted to as an aid in interpreting the contract, to the end that the objects and purposes of the parties may be carried into effect.' . . .

" 'It is axiomatic that all contracts must be construed with reference to their subject-matter and obvious purposes, and, however general the language may be, their scope and effect are necessarily so limited and controlled.' " Hild v. Dunn, 310 Pa. 289, 293.

The rules of construction applicable to a contract of insurance are well settled. The object of this contract is indemnity against loss by fire of defendant's filling station, or any portion of it. If the provisions of the policy are susceptible of two or more interpretations, that one should be adopted that will make the contract effective for the protection of the insured. In other words the contract should be liberally construed in aid

of the indemnity which was in contemplation of the parties who made it: Western & Atlantic Pipe Lines v. Home Ins. Co., 145 Pa. 346. Again, an insurance company issuing a policy upon a business plant, or any portion of it, is chargeable with knowledge of the customary methods of conducting the business in which the property insured is used.

This rule is not limited to insurance upon property in use for manufacturing or other business purposes. It was applied in the construction of a policy issued upon a dwelling house in Doud v. Citizens' Ins. Co., 141 Pa. 47, and in Roe v. Dwelling House Ins. Co., 149 Pa. 94. It was applied to a policy of insurance upon a horse in Haws v. Fire Association of Phila., 114 Pa. 431. See McKeesport Machine Co. v. The Ben Franklin Ins. Co., 173 Pa. 53, 56.

"It is a general rule that a policy of insurance should be construed most strongly against the insurance company, and in all cases of doubt the contract is to be interpreted in favor of the insured": Bingell v. Royal Ins. Co., Ltd., etc., 240 Pa. 412, 417; Lewis et ux. v. Fidelity & Casualty Co., 304 Pa. 503, 508.

Defendant cites Carpenter v. Allemannia Fire Ins. Co., 156 Pa. 37, for definition of the term "additions, adjoining and communicating". That decision merely affirms the fact that in the particular case the frame addition did adjoin and did communicate with the principal building. We do not read that decision as a declaration that to be an "addition adjoining and communicating" the alleged addition must be attached to the principal building.

(Note that the trial judge permitted the insurer to testify to an oral agreement that the addition was not included in the policy. Was the testimony admissible?)

Defendant's brief argues that the decision in Seeds v. Royal Ins. Co. et al., 75 Pa. Superior Ct. 302, rests upon the fact that the two structures were connected by a party wall. In our opinion, the Seeds case declares

that a structure may be an "addition" although not attached to the principal building. It may be, however, that the qualifying words "adjoining and communicating" contained in the instant policy distinguish this claim from the Seeds case.

Defendant further says "in the present case the facts show that the two buildings are entirely separate and distinct." Also, "A covered grease pit is not necessarily a part of a filling station."

We doubt that the court could affirm either of these declarations as a matter of law. Whether a subordinate structure is separate and distinct from the principal building may depend more upon its use than upon its proximity to the larger structure.

Defendant undertakes to distinguish Marsh v. Concord Mutual Fire Ins. Co., 51 Atl. 898, from the case at bar. This decision was cited by the court in the Seeds case. The Marsh case clearly holds that a structure may be "an addition, adjoining and communicating" to the principal building although not physically attached thereto.

The Marsh case pertinently states:

"The point to be determined is not what they in fact intended or expected to do, but what they in fact expressed as their purpose in the writing presented for interpretation. . . . It is not the province of the court to make contracts for parties, or to allow them to change, modify, or abrogate their agreements by parol testimony that they did not intend to bind themselves by the terms they chose to employ as expressive of their intention."

Ideal Pump & Mfg. Co. v. American Central Ins. Co., 152 S. W. 408 (cited in the Seeds case), declares:

" 'One-story frame building, and its additions, adjoining and communicating', does not always mean structures physically attached to, or otherwise connected with the building by machinery, or specific passageways. That cannot be said as a matter of law."

In Taylor v. Northwestern National Ins. Co., 167 Pac. 899, the term "additions, adjoining and communicating" was held to comprehend a shed about 12 by 14 feet in size separated from the principal building by a distance of seven feet.

The foregoing cases, cited by plaintiff and discussed in defendant's brief, are in harmony with the spirit of our own decisions as illustrated by Western & Atlantic Pipe Lines v. Home Ins. Co., 145 Pa. 346, and McKeesport Machine Co. v. The Ben Franklin Ins. Co., 173 Pa. 53, wherein it was declared that the contract should be liberally construed in aid of the indemnity of the parties who made it, and that an insurer issuing a policy ,upon a business plant, or any portion of it, is chargeable with knowledge of the customary methods of conducting the business in which the property insured is used.

It is apparent that defendant insured plaintiff's filling station and dwelling, which included "a one-story frame, composition roofed building and additions thereto, adjoining and communicating".

If the grease pit was an integral part of the filling station, then it was comprehended in the term "additions thereto, adjoining and communicating", notwithstanding a distance of seven feet between them. We have had some difficulty in deciding whether it was for the court or for the jury to determine whether the grease pit was a part of the filling station. The location, dimensions, and purpose of the grease pit are undisputed. But plaintiff's averment that "13. Said covered grease pit was necessary, convenient and essential to the operation of said filling and service station" is flatly denied by defendant.

In paragraph 11 of his statement of claim, plaintiff avers that the grease pit was connected with the filling station by an underground conduit containing wires for transmitting electric current. To this, defendant

entered a denial which in other circumstances might be adjudged insufficient; however, upon a rule for judgment we are required to resolve the doubt in favor of defendant.

If it should be determined that the grease pit was not part of the filling station, there might nevertheless remain the question of defendant's liability for the stock contained in the grease pit.

In Graybill, to use of Brubaker, v. Penn Township Mutual Fire Ins. Assn. of Lancaster, 170 Pa. 75, plaintiff insured the contents of a smokehouse. A fire destroyed plaintiff's butcher shop to which he had removed for sale the contents of the smokehouse. The smokehouse was not burned. A recovery for loss of the meat was allowed notwithstanding that it was destroyed in a building other than that described in the policy.

Defendant, whose business is the description and insurance of risks, must be presumed to be capable of setting forth aptly the obligation assumed under the policy which it prepared.

A court should hesitate to concede to an insurer the right to supply by parol a most important feature of a written agreement, in detriment to the latter.

While we are obliged to concede that plaintiff presents a persuasive case, we encounter several legal questions of somewhat more than ordinary difficulty.

We are further confronted with the principle that judgment for want of a sufficient affidavit of defense is not to be entered where plaintiff's contention is not "clear and free from doubt": Windisch v. First Camden National Bank & Trust Co., 306 Pa. 194.

The liberality of courts with respect to amendments would seem to entitle defendant to amend after his original pleading has been attacked as insufficient.

: The Friend case declares that the question of admissibility of an averment is to be decided only when the

evidence is offered. Entertaining as we do grave doubt of the admissibility of the alleged oral understanding, it seems vain to permit the averment to be incorporated in the pleading; nevertheless, we have concluded to permit the amendment, subject, of course, to plaintiff's right to reply.

We are not at all certain that the undisputed facts are insufficient to enable the court to determine as a matter of law whether the grease pit and contents were insured by the instant policy; however, we believe that a broader enquiry into the facts, including the actual use of the grease pit, the existence of the alleged conduit, etc., might more clearly lead to a proper judicial determination of the controversy: Rodgers v. Mann, 307 Pa. 452.

See Commonwealth ex rel. Schnader v. Globe Indemnity Co., 313 Pa. 498, as to form of judgment for a portion of plaintiff's claim.

### Orders

And now, June 23, 1944, this matter came on for argument upon defendant's rule to amend its affidavit of defense, whereupon, after due consideration, it is ordered that the rule be made absolute.

And now, June 23, 1944, this matter came on for argument upon plaintiff's rule for judgment for amount admitted to be due, and for judgment for want of a sufficient affidavit of defense as to the remaining amount claimed; whereupon, after due consideration, it is ordered, adjudged, and decreed that judgment be entered in favor of the plaintiff and against defendant for $150, together with interest of $8.85, making a total of $158.85, with leave to plaintiff to take such further proceedings as it may be advised are proper to be taken to recover the balance of its claim sec leg. The rule for judgment for want of a sufficient affidavit of defense as to remaining amount claimed is discharged.