## Canton Township v. Bedillion

*Finder & Vlachos*, for plaintiff.

*Charles G. Sweet* and *Adam L. Sanders*, for defendants.

CARSON, P. J., November 30, 1955.—The Township of Canton is a second class township in Washington County. On April 14, 1953, the board of supervisors of the township enacted an ordinance, the relevant sections of which are as follows: "Section One: No person, firm or corporation shall store, accumulate, and/or junk automobiles and/or motor vehicles of whatever type upon private or public property in the township. Section Two: No owner of land within the township shall store, accumulate or junk automobiles and/or motor vehicles of any type upon his land, nor shall owner permit, acquiesce or allow any person, firm or corporation to store, accumulate or junk automobiles and/or motor vehicles of any type upon his land."

The preamble to the ordinance recites that the supervisors have considered the junking or accumulating of wrecked, unused or junked automobiles upon private or public property within the township to be a nuisance.

This ordinance was passed in pursuance to the Second Class Township Code of July 10, 1947, P. L. 1481, art. VII, sec. 9, as amended, 53 PS §19093-702, clause XII, which provides:

". . . [the township supervisors] shall have power —XII. Nuisances. To prohibit nuisances, including but not limited to, accumulations of garbage and rubbish, and the storage of abandoned or junked automobiles, on private and public property, and the carrying on of any offensive manufacture or business; and to remove any nuisance or dangerous structure on public or private grounds after notice to the owner to do so,

and, in his default, to collect the cost of such removal, together with a penalty of ten dollars from the owner by summary proceedings. In the exercise of the powers herein conferred, the township may institute proceedings in courts of equity."

On June 1, 1955, the township filed a complaint in equity against defendants alleging that defendants are owners of 14 lots of ground in the township, being lots nos. 629 to 642, inclusive, in the Gordon Land Company Plan of Lots of record in plan book 2, page 173, that since 1951, defendant, George E. Bedillion, has "caused, permitted or allowed junked, wrecked or useless automobiles to be transported to and placed upon the above-mentioned property, and does dismantle them and strip them of parts, and further does cause fires to be set to the said wrecked or junked motor vehicles, and after dismantling them and burning the said motor vehicles does store or abandon the same upon the said real estate", that the said storing, dismantling and burning of the motor vehicles causes noxious fumes, vapors and unwholesome smells and rodents and other disease bearing animals to come upon the premises of the neighbors to their annoyance and inconvenience in the habitation of their respective dwellings to their great damage, inconvenience and injury, and that the activities of defendants constitute a violation of the ordinance. The township asks this court to issue a permanent injunction, enjoining and restraining defendants from storing abandoned or junked automobiles upon their premises in violation of the ordinance.

In their answer, defendants allege that the burning of the vehicles does not cause noxious fumes, vapors and unwholesome smells, that any smoke resulting from said burning is "undetectable and apparently minute" and is not readily distinguishable from the smoke emanating from other industries in the neigh-

borhood, that no rodents or disease bearing animals habituate defendants' premises and that the surrounding landowners have not been inconvenienced or disturbed in the enjoyment of their property.

From the pleadings, the stipulations of counsel and the testimony taken, the chancellor makes the following . . .

(The findings of fact have been òmitted since information pertinent to this case is included in other portions of the adjudication.)

### Discussion

At the hearing on this matter, defendants admitted that they are violating the ordinance. However, they contend that both the ordinance and the enabling section of the township code above quoted are unconstitutional. Defendants' position is that since, as they claim, their activities do not constitute a nuisance in fact, the township has no authority to enjoin them from the pursuit of such activities. They have taken the broad position that neither the legislature, nor the township, acting in pursuance to statutory authority, may declare every storage of abandoned or junked automobiles to be a nuisance in fact. Defendants argue that the State may only exercise its police power in connection with the preservation, promotion or protection of the public health, morals, safety and welfare and that this power cannot be exercised in an arbitrary, discriminating or unreasonable manner, else it would violate substantive due process. They contend that if every township is given the authority to prohibit absolutely the location of automobile junk yards within its boundaries, it would be tantamount to outlawing the industry entirely.

Defendants having admitted violation of the ordinance, it is clear that should this court determine the ordinance and the enabling legislation to be con-

stitutional, the township is entitled to have the activities of defendants enjoined and abated.

This court is aware of the difficulties inherent in the question involved. On the one hand is the proposition that the Commonwealth and its political subdivisions have the power to prohibit, control and regulate any activity in the interests of the public health, safety or morals; on the other hand, this power should not and cannot be so exercised as to interfere with the rights of property owners in violation of the constitutional safeguards of due process of law. The legislature has given to townships of the second class the power to prohibit nuisances, "including . . . the storage of abandoned or junked automobiles . . ." It is clear, by such language, that the legislature has declared automobile graveyards, as they are commonly called, to be nuisances. Of course, the Commonwealth may not, by legislative fiat, declare and brand as a nuisance that which is not a nuisance in fact, and thereafter prohibit. See Manorville Borough v. Flenner, 286 Pa. 103, 107. If the designation and characterization of automobile graveyards as nuisances were based purely on esthetic considerations, the legislative prohibition should fall. However, it is common knowledge that storage and junking of old automobiles, with the noise incident to their dismantling, and the fumes, smoke and odor attendant to their burning, can and does seriously interfere with the enjoyment and use of their premises by adjoining land owners. Consequently, despite the fact that automobile graveyards do constitute a source of scrap metal and used automobile parts for other industries, this court cannot say that the legislature has exceeded the constitutional exercise of its police power by its enactment of that section of the township code above quoted.

In the case of Whitpain v. Douglass, 63 D. & C. 566

(C. P. Montgomery Co., 1948) the same question came up for consideration. There, the court, through Dannehower, J., said at page 567:

"Defendants make two contentions: (1) That under a reasonable construction the ordinance is not to be applied to a used automobile parts business, where the temporary storage of a few auto bodies is merely incidental; (2) the ordinance (as well as the statute whereby it was authorized to be adopted) is unconstitutional as an arbitrary confiscation of private property, and as not having any reasonable relation to the public health, safety, morals or general welfare.

"The ordinance is not directed at any particular type of business. It is directed at the (1) accumulation of garbage and rubbish and (2) the storage of abandoned or junked automobiles and (3) the carrying on of any offensive business. Three types of offenses are thus prohibited, and the second is the one involved here. It matters not whether the activity of defendants is so offensive as to be a nuisance; the inquiry is simply whether there has been a storage of abandoned or junked automobiles. Under the evidence, the chancellor was fully warranted in finding that there was such storage, and therefore a violation.

"As to the matter of constitutionality, counsel for defendants has cited Wunderle v. Board of Adjustment of the Borough of Hatboro, 62 Montg. 231 (1946), Stott's Petition, 58 Montg. 372 (1942), and Commonwealth v. Pugh et al., 39 D. & C. 98 (1940). The first two cases arose under zoning ordinances. Acts of assembly granting to municipalities the right to adopt zoning ordinances invariably contain the qualification that the measures adopted must be 'for the purpose of promoting health, safety, morals or the general welfare' of the municipality. See, as to second class townships, the Act of July 1, 1937, P. L. 2624, secs.

1 and 3, 53 PS §§19093-2201 and 19093-2203. These cases, therefore, are readily distinguishable, as the restrictions were found to go beyond the permission granted by statute.

"The Pugh case merely held that the township of West Norriton had no legislative power or authority to compel abolition of automobile graveyards. What was there said as to constitutionality by way of dictum was relevant there, for the township was attempting to legislate under its implied power, which did not extend to such a prohibition. In our case, the legislative authority is express and clear."

In the case of Borough of Dallastown v. Chanceford Township, 68 York 5 (1954), which involves an ordinance prohibiting the accumulation of garbage or rubbish, passed in pursuance to the same section of the township code here involved, the court said at page 10:

"As to the fourth question, the Second Class Township Code, Section 702 XII, reads, in enumeration of the powers of the Township Supervisors: 'To prohibit nuisances, including but not limited to, accumulation of garbage and rubbish . . .' The words 'but not limited to' can only mean that the Supervisors are empowered to prohibit nuisances other than the accumulation of garbage. Therefore, we can in effect read the statute as follows: 'To prohibit nuisances, including accumulations of garbage and rubbish. . . .' Thus the legislature took pains to make especially clear that township supervisors could prohibit accumulation of garbage. The legislature deemed it wise to enumerate this specific power rather than to leave to the courts the determination of whether or not the accumulation of garbage was in fact a nuisance. If, as appellant contends, a nuisance must first be shown, then why would the legislature go to the trouble of enumerating

and emphasizing the right to prohibit 'accumulations of garbage and rubbish?' Under this same subsection of the Second Class Township Code, the courts of Pennsylvania have permitted township supervisors to prohibit absolutely the storage of abandoned or junked automobiles: Whitpain v. Douglass, 63 D. & C. 556. Surely it cannot be insisted that accumulation of garbage is less of a nuisance than storage of abandoned automobiles. In Township of Neshannock v. Bradley, 52 D. & C. 142, a case decided under this very subsection of the Second Class Township Code, it was pointed out that, 'The legislature may prescribe certain things as nuisances and may change the common law of nuisance, Heinl et al. v. Pecher et al., 330 Pa. 232.' In Whitpain v. Douglass, supra, the court said: 'It matters not whether the activity of defendants is so offensive as to be a nuisance; the inquiry is simply whether there has been a storage of abandoned or junked automobiles.' Here, our sole inquiry is whether or not there has been an accumulation of garbage, and this is readily admitted by appellant. It follows that townships of the Second Class by legislative enactment have the power to prohibit the dumping or accumulation of garbage."

The case of Falls Township v. Wisniewski, 89 D. & C. 540 (C. P. Bucks Co., 1954) involved exactly the same question under consideration here. In that case, the court, through Biester, J., said at pages 544 and 545:

"Defendants contend that this section is clear and unambiguous and that it is apparent that the legislature has, by its provisions, given authority to second class townships to prohibit nuisances, including the storage of abandoned or junked automobiles, only when such storage of automobiles constitutes a nuisance in fact; that the statute was not intended to,

and does not, authorize townships to declare such storage to be a nuisance unless it is so in fact.

"We are not in accord with this construction of the section in question. On the contrary, we view it as giving authority to the township to declare any storage of abandoned or junked automobiles to be a nuisance. In doing so we regard the word 'including', as it is used in the section now under consideration, as being a term of enlargement rather than a word of limitation. See Weller and Weller v. The Grange Mutual Casualty Ins. Co. of Harrisburg, Pa., 105 Pa. Superior Ct. 547; Cummins v. German American Insurance Company of New York, 197 Pa. 61.

"Reference to the Statutory Construction Act of May 28, 1937, P. L. 1019, 46, PS §551, etc., appears to lend weight to this view. The legislature cannot be deemed to intend that language used in a statute shall be superfluous and without import: Commonwealth v. Mack Bros. Motor Car Company 359 Pa. 636. We are also directed to be guided by the presumption 'that the legislature does not intend a result that is absurd, impossible of execution or unreasonable', and our courts have said that in construing a statute good sense and practical utility must be considered and that each act should receive a sensible construction: Hannum et al. v. Gruver et al., supra; Crew et al. v. Gallagher et al., supra.

"If we adopt the construction sought for by defendants, sufficient authority would be vested in the township if the legislature had simply authorized townships of the second class 'to prohibit nuisances' and the definitive language following as to the type of activity which might be considered a nuisance would be useless, superfluous and without import.

"The Statutory Construction Act also permits us to consider, inter alia, the occasion and necessity for the law, the circumstances under which it was enacted,

the mischief to be remedied and the object to be obtained. After giving consideration to all of these factors, it is our conclusion that it was the intention of the legislature to authorize the municipality to prohibit, under any and all circumstances, the storage of abandoned or junked automobiles."

The chancellor is in full accord with the pronouncements of the courts of our sister counties on this matter. We hold that both the legislation in question and the ordinance passed in pursuance thereto are constitutional. Therefore, in view of defendants' admission that they are violating the ordinance, we need not decide whether their activities constitute a nuisance in fact: Commonwealth v. Baker, 160 Pa. Superior Ct. 640.

### Conclusions of Law

First: Defendants are operating and conducting the business of storing, junked or abandoned automobiles upon their property.

Second: Defendants are operating an automobile graveyard or junk yard upon their property.

Third: Defendants are violating the ordinance in question.

Fourth: Defendants shall pay the costs of this proceeding.

Fifth: A decree shall be made in the following form:

And now, this . . . . . day of . . . . . . . . . . . . . ., 1955, the prayer of plaintiff, Township of Canton, for permanent injunction against defendants George E. Bedillion, Margaret E. Bedillion, Paul K. Bedillion and Mary Lou Bedillion, is hereby granted and said defendants are hereby ordered, enjoined and restrained henceforth from storing abandoned or junked automobiles upon their premises known and designated as lots 629 to 642 inclusive in the Gordon Land Com-

pany Plan of Lots situate in Canton Township, Washington County, in plan book 2, page 173, and further, defendants are directed to remove from said premises any and all junked or abandoned automobiles stored thereon within a period of 90 days from the date of this order.

*Decree Nisi*

And now, November 30, 1955, it is ordered that the foregoing adjudication be filed, that notice of its filing be given by the prothonotary to counsel appearing of record, that if no exceptions be filed within 20 days after such notice shall have been given, a decree shall be entered by the prothonotary in the form set forth in the fifth conclusion of law.